# Staunton.

## BURTON AND CONQUEST v. COMMONWEALTH.

### September 15, 1908.

1. CRIMINAL LAW—*Motive—Perpetrator of Crime Unknown.*—Motive, in the absence of an express declaration, may be shown by circumstances, and the fact that there had been a previous difficulty between the accused and the persons intended to be injured may be a circumstance which, in connection with other circumstances, would be sufficient to establish motive, but taken by itself is wholly inadequate to warrant a jury in inferring that the accused harbored such a grudge against the persons intended to be injured as would lead the accused to endeavor to take their lives. Where the perpetrator of a crime is unknown, the mere proof of motive on the part of one charged with its commission is not sufficient to warrant a conviction.

2. CRIMINAL LAW—*Evidence—Proof Required to Commit.*—In order to justify a conviction of a crime, every fact necessary to a verdict of guilty must be proved beyond a reasonable doubt. The result of the evidence must be to exclude every reasonable hypothesis of innocence and be consistent only with the guilt of the accused.

3. CRIMINAL LAW—*New Trial—Verdict Contrary to Evidence—Arbitrary Interpretation of Facts.*—A motion to set aside a verdict of guilty in a criminal case is heard as upon a demurrer to the evidence, and it is the duty of the court to consider whether or not the evidence is sufficient to sustain the verdict. But this rule does not leave the jury at liberty to guess, and where a fact is equally susceptible to two interpretations, one of which is consistent with the innocence of the accused, they cannot arbitrarily adopt that interpretation which incriminates him. The evidence in the case at bar is wholly insufficient to sustain the verdict of the jury.

4. CRIMINAL LAW—*New Trial—Evidence Shows Murder—Verdict Guilty of Manslaughter—Discretion of Jury.*—On an indictment for murder where the verdict is guilty of manslaughter, the verdict will not be set aside at the instance of the accused because the evidence shows "murder by lying in wait," which the statute declares to be murder of the first degree. The statutes of this State allow juries

a certain degree of latitude and discretion in applying the law to the facts, and in fixing the degree of guilt of one convicted of crime.

5. INSTRUCTIONS—*Evidence to Support.*—It is error to give an instruction when there is no evidence tending to support it, even though it correctly states the law.

Error to a judgment of the Corporation Court of the city of Norfolk on an indictment for murder. To a judgment of conviction of manslaughter defendants assign error.

*Reversed.*

The opinion states the case.

*Jeffries, Wolcott & Wolcott* and *Thomas H. Willcox,* for the plaintiffs in error.

*Attorney General Wm. A. Anderson,* for the Commonwealth.

KEITH, P., delivered the opinion of the court.

Burton and Conquest were jointly indicted in the Circuit Court of Accomac county, for the murder of John Topping. They were found guilty and sentenced to confinement in the penitentiary for ten years. To that judgment a writ of error was awarded by this court. The judgment was reversed, and the case was removed to the Corporation Court of the city of Norfolk, where they were again tried and a verdict was rendered against them of voluntary manslaughter, and fixing their punishment at one year in the penitentiary. To the judgment upon this verdict a writ of error was awarded by this court.

The first error assigned is set forth in bills of exceptions Nos. 1 and 2, and is to the admission of the evidence of John M. Fosque and Tank Kellam by the trial court.

Fosque, it appears, had secured a judgment against Sylvanus Conquest for a small amount of money. Tank Kellam, in whose hands execution upon the judgment had been placed,

levied the same upon a horse owned by Conquest. The horse was found in the possession of Burton. A controversy arose between the constable, Kellam, and Conquest, and Burton it is claimed behaved himself in an offensive manner towards the constable in the discharge of his duty. Burton subsequently paid the debt, and later in the day a warrant charging Conquest with resisting the constable was tried and a fine imposed upon him of $50. During the progress of this trial Burton, who was a witness, was directed to leave the witness' chair, but did not do so as quickly as in the opinion of the constable he should have done, and the constable thereupon jerked the chair from under him.

This evidence was introduced by the Commonwealth, in order to show that the prisoners had a grudge against Fosque and Kellam, and as constituting a motive for their subsequent conduct, which it is claimed resulted in the death of John Topping.

The circumstances attending the shooting of Topping are as follows: A hack containing three or four persons left the hotel in the town of Onancock, in the county of Accomac, about a quarter before nine o'clock on the evening of the 10th of August, 1907. The hack was driven by one Braden Short. On his left was Dr. M. J. Hunt, and upon the rear seat were a salesman (whose name is not given) and a Mr. Nelson. When the hack had passed Burton's store, which was on the left of the road, looking in the direction in which the hack was going, the witness Hunt says that he saw an object which he at first thought was a hog, but it at once stood up and showed that it was a man, who called out "blaze away!" and thereupon a shot was fired which he believes was fired from a gun, and a second shot, which he also thought came from a gun; and then a number of shots, perhaps as many as twenty or twenty-five, which he took to be pistol shots, were fired in very rapid succession, and several of these bullets struck different parts of the hack; that upon the firing of the first shot the man who had given the

order to fire cried out.    The hackman, Braden Short, crouched down so as to avoid the fusilade, and the horses moved slowly. This witness was upon the left side of the driver.    The curtains upon that side were open, so that he could see quite distinctly all that occurred.    He says that there was a dim light in Burton's store, and that the firing took place after they had passed Burton's store about twenty-five or thirty feet.

It turned out that John Topping received a gun-shot wound in the shoulder, from which he died on the 22nd day of August.

The hack belonged to John M. Fosque, to whom Conquest owed the debt, and whose testimony with reference to the sale of a horse for the payment of that debt was the subject of the first bill of exceptions.    It appears that Fosque sometimes drove that hack.    Sometimes it was driven by others.    On the night in question it was driven by Braden Short.

The theory of the prosecution is that, having a grudge against Fosque on account of what took place bteween them and Fosque and the constable, Kellam, the petitioners armed themselves, formed an ambuscade along with other confederates, and fired the shots at the hack; that Topping had been stationed by them as a lookout to warn them of the approach of the hack, and in that way received the wound from which he died.

Burton was a merchant in the town of Onancock.    Conquest had been employed in his store.    There were in Burton's store upon the night in question and just before the shooting two other colored men in the employment of Burton.    A witness for the Commonwealth, Frank Johnson, says that a short time before nine o'clock he was at Burton's store, and that Burton sent him to the house of Spencer Bailey to get a gun belonging to Jim Warren, and that he got the gun and gave it to Burton.

This evidence constitutes the case made by the Commonwealth.

On behalf of the prisoners, it was shown that Burton some time before the shooting received a message from a respectable

young gentleman, Mr. J. C. Westcott, that he had better leave town, owing to some trouble that had arisen between the white and colored people earlier in the evening, which had resulted in the killing of a citizen of Onancock by a negro named Uzzle, and as a result of which a very strong feeling had been aroused among the people of Onancock. Conquest received a like message. In consequence of this Burton directed his store to be closed, and, according to their testimony, he and Conquest and the other two men who were employed in the store went off, having first closed the store and turned down the lights. Burton first went to the house at which he was in the habit of taking his meals, kept by a colored woman named Vene Ames, and stayed there a short time, but finally went across the street to a piece of woods in the rear of Spencer Bailey's restaurant, where he and Conquest concealed themselves.

Motive, in the absence of an express declaration, may be shown by circumstances; and the occurrences which took place in connection with the effort on the part of the constable to collect a debt due to Fosque, and the conduct of Conquest and Burton on that occasion may have been a circumstance which, in connection with other circumstances, would have been sufficient to establish motive; but taken by itself (and it stands alone upon that subject in this record) it was wholly inadequate to warrant a jury in inferring that plaintiffs in error harbored a grudge against Fosque which would lead them to endeavor to take his life. Of course, if the evidence had been plain that the plaintiffs in error were guilty of the offense charged, very slight proof of motive would be sufficient; but we are not here looking for a motive as actuating the commission of a crime, the perpetrator of which is known, but we are here considering motive as tending to disclose the active agent in a crime whose perpetrator is unknown, and as shedding light upon circumstances otherwise obscure.

There is but one fact of an incriminating nature shown in the evidence against Burton and Conquest, and that is the

evidence of the witness, Johnson, that Burton a short time before the shooting sent him to the house of Spencer Bailey to procure a gun, and that a short time before the shooting Burton and Conquest were near the spot where it occurred. It is difficult to understand how the jury could have attached the slightest credit to the testimony of Johnson. He was shown to have made the most contradictory statements, to have been utterly regardless of the sanction of an oath, and to have been ignorant of any moral distinction between truth and falsehood. But if it be conceded that his credibility was a matter for the jury, and that its verdict had given credit to this witness, it is wholly insufficient to sustain the verdict.

Suppose Burton did send for a gun. Is that evidence that he meant to lie in wait and make an unprovoked attack upon the stage upon the chance of killing Fosque? Is it not more rational to suppose that if he sent for the gun, he did it because of the message which he had received, that he himself was to be the object of an attack, and that he armed himself for self-protection? Is it possible that a man, acting upon a previous grudge, having gathered his confederates about him, and intending to form an ambuscade to kill his enemy, would wait until the very moment of action before providing himself with any weapon of offense?

The evidence is that Fosque owned this hack. It carried passengers from the hotel and other parts of the town to the railroad station. It was driven sometimes by Fosque, and sometimes by colored men. On the night in question it was driven by Braden Short. Burton and Conquest and their confederates must have known that it was a matter of chance whether the hack on that occasion would be driven by Fosque, whom they wished to kill according to the theory of the prosecution, or by Braden Short, one of their own race, against whom they entertained no grudge. Surely they would have made inquiry upon that subject and informed themselves as to whether or not a friend or an enemy would be the victim.

The theory that Topping was one of the confederates, and that his part in the performance was to give warning of the approach of the hack, is equally improbable, not to say preposterous. The hack, be it remembered, was coming from the direction of the hotel, and passed Burton's store on its way to the depot. The firing took place about twenty-five or thirty feet after the hack had passed Burton's store, and the man who gave the order to fire, according to the witness Hunt, stood about fifteen feet further on in the direction of the depot; so that the order to fire was given by a man at a point where the hack had passed Burton's store thirty-five or forty feet. Hunt says that this man who gave the order to fire was the man who was shot. Now one would suppose that a lookout would have been stationed in the direction from which the person or thing expected was to come; that the lookout would have been placed at a point upon the street before the hack reached Burton's store where the ambuscade was placed, and not at a point beyond it where those who were to be informed would be advised of its approach before the lookout became aware of it. If Topping was placed upon the street as a lookout, then he of course was advised as to the point at which Burton, Conquest and their confederates were concealed; and yet it is gravely argued that he would place himself between the ambush and the object of the attack, and himself give the order to fire, the result of which was a volley in which he received a mortal wound.

In order to justify a conviction, juries are told that every fact necessary to a verdict of guilty must be proved beyond a reasonable doubt; and that, if there be a reasonable doubt as to any fact, they shall acquit; that the result of the evidence must be to exclude every reasonable hypothesis of innocence and be consistent only with the guilt of the accused.

Now, it is true, that after the jury have rendered their verdict and a court is called upon to set it aside as being contrary to the evidence, the motion is heard, under our statute, as upon

a demurrer to evidence, and it becomes the duty of the court to consider whether or not the evidence is sufficient to sustain the verdict.    But the rule does not leave the jury at liberty to guess, and where a fact is equally susceptible of two interpretations one of which is consistent with the innocence of the accused, they cannot arbitrarily adopt that interpretation which incriminates him.

The evidence in this case, considered in the light of these plain and unquestioned principles of criminal law, is wholly insufficient, in our judgment, to sustain the verdict.

Upon behalf of the plaintiffs in error it is claimed that the prisoners ought to be discharged; that it appears by all of the evidence that if they were guilty of any offense, it was that of murder by lying in wait; and that the verdict of murder in the second degree rendered by the jury upon the trial in the county of Accomac acquitted them of murder in the first degree, the only offense of which they could with any propriety have been found guilty under the evidence.

The indictment in this case was in the usual form of an indictment for murder; and by section 4040 of the Code it is provided, that "If a person indicted of a felony be by the jury acquitted of a part and convicted of a part of the offense charged, he shall be sentenced for such part as he is so convicted of, if the same shall be substantially charged in the indictment, whether it be felony or misdemeanor;" and by section 4041 of the Code it is provided, that "If a person indicted for murder be found guilty by the jury, they shall in their verdict fix whether he is guilty of murder in the first or second degree."

The various sections of the Code applicable to this subject, and which are, as the phrase is, *in pari materia,* are to be read together.    It is true that our statute (section 3662, Va. Code, 1904) which defines murder, says, among other things, that "murder by lying in wait" shall be murder in the first degree. But this is to be read along with the power conferred upon the

jury by the sections just quoted. Our jurisprudence, in this and in other respects, may be amenable to crticism of schoolmen and logicians, but subjected to the test of actual experience it has appeared in practice to be well that the law, after framing definitions and formulating rules of conduct, should allow to courts and juries, in their application and enforcement, a certain latitude and discretion. And so it comes to pass that a man may be indicted for murder of the first degree by the various means embraced in the statute, the evidence adduced may tend to the proof of the offense named in the indictment and none other, and yet the jury, acting under this discretion with which they have been clothed by the law, may find the offender guilty of a less offense. And it is well in practice that it should be so, else, owing to the tenderness of juries and their reluctance to impose the highest penalty, many crimes would go wholly unpunished, and thus the rigor of the law would tend rather to the promotion than to the prevention of crime.

At the request of the Commonwealth, the court gave, among others, the instruction marked in the record "E," which is as follows: "The court instructs the jury, that though they believe that neither Samuel L. Burton nor Sylvanus Conquest actually fired at or upon the hack in which several people were riding as aforesaid, but that some other person or persons maliciously actually fired upon said hack in which the said people were riding, with guns and pistols, charged with deadly loads, and killed John Topping, who was passing by or standing near the scene of shooting, yet if they further believe the said Samuel L. Burton and Sylvanus Conquest were present and lending countenance, encouraging, aiding, abetting, counselling, advising or consenting to the firing upon said hack, as aforesaid, then they are guilty of murder."

We have seen that the evidence is insufficient to show that the shots which killed Topping were fired by either Burton or Conquest; while as to the second branch of the instruction there is nothing whatever in the record to support it. There is

not a scintilla of evidence that either Burton or Conquest countenanced, encouraged, counselled, aided, abetted, advised or consented to the firing upon the hack.   This instruction, therefore, while it embodies a correct proposition of law, ought not to have been given in this case.

We see no other error in the ruling of the court upon the instructions.

We are of opinion, therefore, that the judgment should be reversed, the verdict of the jury set aside, and the case remanded to the Corporation Court of the city of Norfolk.

*Reversed.*