Present: Lemons, C.J., Goodwyn, Mims, McClanahan, and Powell, JJ., and Lacy and Millette, S.JJ.

MARK O'HARA WRIGHT

v. Record No. 150181                 OPINION BY SENIOR JUSTICE
                                        ELIZABETH B. LACY
COMMONWEALTH OF VIRGINIA               August 18, 2016

FROM THE COURT OF APPEALS OF VIRGINIA

In this appeal, Mark O'Hara Wright challenges his convictions by a Rockingham County jury on the charges of felony malicious bodily injury by means of a caustic substance in violation of Code § 18.2-52, felony assault and battery of a law enforcement officer in violation of Code § 18.2-57, obstruction of justice in violation of Code § 18.2-460, and grand larceny from the person in violation of Code § 18.2-95.[*]

FACTS AND PROCEEDINGS

Garrett Atkins worked at a Martin's grocery store in Harrisonburg, Virginia as an asset protection store detective. On March 25, 2012, he was dressed in a "hoodie" and jeans when he saw Mark Wright and Robert Wright leave the beer aisle in the store, each carrying a case of beer and some deli sandwiches. They left the store without paying for the merchandise. Atkins followed the two men into the parking lot and identified himself as a Martin's employee. Atkins asked Robert, who was standing on the passenger side of a green Dodge Caravan van, for the receipt for the items. Robert said he had a receipt but did not offer it to Atkins. Atkins then took the case of beer from Robert. At that point, Robert's 15 year-old stepson got out of the van, took

---

[*] Wright was also convicted of petit larceny in violation of Code § 18.2-96 and contributing to the delinquency of a minor in violation of Code § 18.2-371. Those convictions are not at issue in this appeal.

a "fighting stance" and threatened Atkins. Robert took the beer back from Atkins. Mark, who was on the other side of the van, said "let's go, let's just go, let's go." Atkins stepped forward and saw Mark Wright throw the case of beer he was holding into the van. Robert also threw his case of beer into the van. The three men got into the van and drove off. Atkins then wrote down the van's license plate number, as well as the make and model of the van. Soon after, he called the police.

Deputy Christopher Greathead of the Rockingham County Sheriff's Department contacted the registered owner of the Dodge Caravan and learned that he had sold the van to his brother who lived at 1732 Boyers Road "out of" Harrisonburg. When Greathead arrived at that address at 7:00 p.m. he saw a green Dodge Caravan, with the license plates removed, parked south of the residence in the grass. A woman and teenaged boy were walking from the van to the rear of the residence. Deputy Greathead knocked on a back door of the residence, which was a basement door, but received no answer. He also knocked on the front door and rang the doorbell, but received no response. He returned to his patrol car to report his findings to the Harrisonburg Police Department when a male and female arrived in a car. While talking with them, a woman came out of the house. She said she must have been sleeping and did not hear the doorbell or Greathead's knocking. Greathead asked her if someone was in the basement. The woman and the other two individuals said that no one should be in the basement but that Mark Wright stayed there from time to time. At that point, Greathead received word that a warrant had been issued based on the vehicle's location at the house. Deputy Greathead, along with an officer from the Harrisonburg Police Department who had arrived, watched the perimeter of the property to make sure that no one else "came or went."

While waiting for the officers to arrive with the search warrant, one of the women stepped out of the house and said someone was crying in the basement. Soon afterward, the woman and the teenager, whom Deputy Greathead had seen enter the house from the backyard, came out of the front door and asked if the police had "gassed" the house. Deputy Greathead replied that he had no reason to gas the house and asked to come inside. He was given permission to enter the house and once inside, he noticed a strong odor "like chlorine" which caused a burning sensation to the eyes and coughing. He told the two women and the teenager to leave the house for their safety. Deputy Greathead returned to his patrol car, advised dispatch of the chlorine odor at the residence and retrieved a gas mask from his car. He obtained consent to go back into the house where he heard some "coughing and commotion" in the basement.

Wearing the gas mask, Deputy Greathead went down the hallway, announced his presence and asked if anyone was there. He did not receive a reply. He proceeded down the basement steps, repeated his inquiry and heard a male voice say "what are you doing here, get out." Greathead, with his patrol light on, proceeded around a series of corners in the basement reaching a small room where he confronted Robert Wright. Robert was standing approximately 12 feet in front of Greathead to his left. Robert raised his hands in response to Greathead's command. He was holding a beer bottle in his left hand and his right hand was empty. Greathead directed Robert to put down the beer bottle and to get down on the ground. Robert moved toward Greathead until he reached a water heater about "a couple of feet" in front of Greathead. Greathead testified that as Robert set the beer bottle on the water heater, he dropped his left arm, which was partly hidden from Greathead's view, in one continuous motion. Within "a second or two" after he set the beer bottle down, Greathead testified that Robert was "looking at me and I was still yelling commands" when a reddish-orange cloud came floating toward him

3

from Robert's direction. According to Greathead, the cloud probably originated "right beside" Robert – "It just came from the area behind the water heater and [was] floating my way." As the cloud reached Greathead, his arms, the area around his gas mask, his neck, and forehead began burning. The substance, later determined to be a bear deterrent, also reached his eyes. Greathead left the basement room. Although Greathead and another officer reentered the house, the fumes were overwhelming and the officers ultimately had to retreat. At that point, other city and county law enforcement personnel along with a SWAT team surrounded the house and attempted to negotiate with Robert. About two hours after Greathead was exposed to the bear deterrent, the police broke a window in the basement and entered the basement where they found Robert and Mark Wright. They were placed in custody. No other persons were found in the basement or other rooms in the house. Mark and Robert were physically placed on the ground and arrested.

Mark Wright was indicted for felony malicious bodily injury by means of a caustic substance, robbery as a principal in the second degree, assault and battery of a law enforcement officer, obstruction of justice by threats or force, contributing to the delinquency of a minor and petit larceny. Prior to submission of the case to the jury, the Commonwealth offered an instruction adding to the definition of robbery "a lesser included charge [of] grand larceny from the person." Wright objected saying that the evidence did not support any intimidation or threat of bodily harm to the victim, Garrett Atkins. The trial court overruled Wright's objection. The jury convicted Wright of all the charges except robbery, finding him guilty instead of grand larceny from the person. The trial court denied Wright's motions arguing to strike the evidence and to set aside the jury verdict on all charges except for his conviction of petit larceny.

Wright appealed to the Court of Appeals, challenging his conviction of grand larceny from the person because it was not a lesser-included offense of any offenses with which he had been charged and because the evidence was insufficient to convict him of that offense and, as relevant here, the other charges. The Court of Appeals, in a per curiam order, held that by operation of Rule 5A:18, Wright had waived his challenge to the conviction of grand larceny from the person because it was not a lesser-included offense of the charged offenses, noting that he had not raised that issue at trial. *Wright v. Commonwealth*, Record No. 0585-13-3 (December 6, 2013). The Court refused to consider the issue under the "ends of justice" or "good cause" exception to that rule. *Wright v. Commonwealth*, Record No. 0585-13-3 (February 20, 2014). In an unpublished memorandum opinion, a three-judge panel of the Court of Appeals also refused to consider Wright's argument that the evidence was insufficient to sustain the grand larceny of the person conviction because there was no evidence of the value of the items Wright was charged with taking. *Wright v. Commonwealth*, Record No. 0585-13-3, 2014 Va. App. LEXIS 376, at *3, n.1 (Nov. 18, 2014). This argument, the Court concluded, was not raised by an assignment of error and therefore, under Rule 5A:12(c), would not be considered. *Id.* The Court also noted that Rule 5A:12(c) does not contain any exceptions for "the ends of justice" or "good cause." *Id.* The Court concluded that the evidence was sufficient to sustain all convictions and affirmed the judgment of the trial court.

We awarded Wright an appeal limited to five assignments of error.

DISCUSSION

I.     Lesser-Included Offense

In his first assignment of error, Wright asserts that the Court of Appeals erred in holding that the trial court did not err by violating his due process rights when it entered judgment on the

5

jury verdict finding Wright guilty of grand larceny from the person when Wright was not charged with that crime and it is not a lesser-included offense of any of the crimes with which Wright was charged. As recited above, although Wright raised this issue as an assignment of error in the Court of Appeals, the Court of Appeals refused to consider this assignment of error, applying Rule 5A:18. The Court of Appeals, in an unpublished order, also denied Wright's motion for review by a three-judge panel of that Court seeking application of the "ends of justice" exception to Rule 5A:18. The first assignment of error raised by Wright here, therefore, does not address the Court of Appeal's application of Rule 5A:18 or its refusal to apply the "ends of justice" exception to that rule.

Rule 5:17(c)(iii) provides that "an assignment of error that does not address the findings or rulings in the trial court or other tribunal from which an appeal is taken, . . . is not sufficient." Accordingly, Rule 5:17(c)(iii) precludes us from considering the first assignment of error.

## II.      Sufficiency of Evidence of Value

Wright's second assignment of error charges that:

> The Court of Appeals erred when it affirmed Appellant's conviction for grand larceny from a person because there was no evidence establishing the value of the item(s) taken from the person of the Martin's employee, and Appellant preserved this argument in the Court of Appeals.

This assignment of error can be read in two ways – the first, that the Court of Appeals erred in holding that there was sufficient evidence of the value of the items Mark Wright allegedly took to support the grand larceny conviction. As discussed above, the Court of Appeals did not address the substance of the argument relating to the value of the items. The Court of Appeals applied Rule 5A:12(c) and refused to consider the issue because it was not included in an assignment of error. Under this reading, Rule 5:17(c)(iii) precludes us from considering the second assignment of error because it does not address the ruling of the Court of Appeals.

6

An alternative way to read Wright's second assignment of error is that the Court of Appeals erred in affirming the grand larceny from the person conviction because, contrary to the ruling of the Court of Appeals applying Rule 5A:12(c), Wright had sufficiently raised the issue of value in the assignment of error filed in the Court of Appeals and that the evidence of value was insufficient. In his argument on the assignment of error here, Wright asserts that his assignment of error in the Court of Appeals was sufficient because his argument under that assignment included a paragraph asserting that, although there was evidence of the approximate total value of the items taken from the Martin's store, there was no evidence of the value of the items he took or that Robert took. This reading of the assignment of error requires us to determine if the Court of Appeals erred in its application of Rule 5A:12(c).

The assignment of error at issue in the Court of Appeals stated:

> The trial court erred when it denied Appellant's motion to set aside the verdict and held the evidence sufficient to support Appellant's conviction for grand larceny from a person because there was no evidence showing that appellant participated in any way, or was aware of, the larceny from a person committed by another individual.

This assignment of error specifically identifies the reason Wright asserts that the trial court erred in affirming the conviction of grand larceny from a person; to wit, that there was no evidence showing that Wright participated in, or was aware of, the larceny committed by Robert. It does not suggest that the appellant is relying on additional or other grounds for reversal of the trial court's ruling. Accordingly, we do not find error in the Court of Appeals' decision not to take notice of Wright's argument regarding evidence of the value of the items taken pursuant to Rule 5A:12(c).

Wright asks us to consider the issue raised by his second assignment of error under the "ends of justice" exception to Rule 5:25. We decline to do so. The "ends of justice" exception

7

in Rule 5:25 does not apply to all circumstances of procedural infirmity. It applies in instances in which a contemporaneous objection was not raised. The procedural infirmity here is not a matter of contemporaneous objection under Rule 5:25, and accordingly, the "good cause exception" is unavailable.

### III. Felony Malicious Bodily Injury by Means of a Caustic Substance

In his next assignment of error, Wright argues that the Court of Appeals erred in holding the evidence was sufficient to support his conviction for felony malicious bodily injury by means of a caustic substance, in violation of Code § 18.2-52, because there was no evidence showing he participated in, or was present at, the assault Robert committed. Wright argues here, as he did in the trial court and the Court of Appeals, that the evidence was insufficient to find guilt based on Deputy Greathead's testimony that he saw only Robert in the basement at the time the bear deterrent was released and that Robert, in one fluid motion, set the beer bottle on the water heater and dropped his left arm, which was partly hidden from Greathead's view. It was then that the reddish-orange cloud came toward Greathead and caused him injury. Deputy Greathead could not say whether Mark was "upstairs" in the house at that time because he had not conducted "a sweep" of the upstairs before he went into the basement. Rather, Greathead testified that the only time he saw Mark was "not until the end" of the incident, approximately two hours after he had been exposed to the bear deterrent, and Wright also asserts that the evidence that the SWAT team found him in the basement when they entered the basement does not support an inference that Wright was in the basement two hours earlier when the bear deterrent was released. Wright contends the Commonwealth therefore failed to prove, beyond a reasonable doubt, that he was present in the basement and participated in Robert's assault against Greathead as a principal in the first or second degree.

8

The Court of Appeals concluded that although there was no "direct" evidence to indicate Mark Wright was in the basement at the time of the crimes against Deputy Greathead, there was "ample circumstantial evidence . . . from which the jury could draw a reasonable inference that Wright was in the basement of the house and was an active participant in the crimes for which he was convicted." *Wright*, 2014 Va. App. LEXIS 376, at *8 (unpublished). The Court of Appeals opined that the jury could have inferred that the reason Deputy Greathead did not see Mark Wright at the time the substance was released was because the room was dark, his attention was on Robert and the caustic agent was released "while Robert's hands were raised." *Id.* The Court of Appeals reasoned that the jury could have reasonably inferred Mark was hiding behind the water heater and released the caustic substance. Based on this review, the Court of Appeals affirmed Wright's convictions, holding the evidence was sufficient to support the jury's verdict that "Wright caused felony malicious bodily injury to Deputy Greathead by means of a caustic substance." *Id.* at *10. We disagree.

When we review the sufficiency of circumstantial evidence necessary to sustain a conviction we have said that:

> If the proof relied upon by the Commonwealth is wholly circumstantial, . . . then to establish guilt beyond a reasonable doubt all necessary circumstances proved must be consistent with guilt and inconsistent with innocence. They must overcome the presumption of innocence and exclude all reasonable conclusions inconsistent with that of guilt. To accomplish that, the chain of necessary circumstances must be unbroken and the evidence as a whole must satisfy the guarded judgment that both the corpus delicti and the criminal agency of the accused have been proved to the exclusion of any other rational hypothesis and to a moral certainty.

*LaPrade v. Commonwealth*, 191 Va. 410, 418, 61 S.E.2d 313, 316 (1950); *see also*

*Commonwealth v. Smith*, 259 Va. 780, 782, 529 S.E.2d 78, 79 (2000) ("[W]here a fact is equally susceptible of two interpretations one of which is consistent with the innocence of the accused,

[the trier of fact] cannot arbitrarily adopt that interpretation which incriminates [the accused].")) (quoting *Burton v. Commonwealth*, 108 Va. 892, 899, 62 S.E. 376, 379 (1908)). Further, evidence that raises no more than a suspicion of guilt "no matter how strong, is insufficient to sustain a criminal conviction." *Stover v. Commonwealth*, 222 Va. 618, 624, 283 S.E.2d 194, 197 (1981).

Applying these well-established principles to the evidence here, viewed in the light most favorable to the Commonwealth, we cannot say that the Commonwealth established, beyond a reasonable doubt, Mark Wright's guilt of felony malicious bodily injury by means of a caustic substance. Code § 18.2-52. The lynchpin of the Court of Appeals' conclusion is that Mark Wright must have released the bear deterrent, even though Deputy Greathead did not see Mark in the basement at that time, because if the caustic cloud appeared "while Robert's hands were raised" someone else – namely, Mark – must have released the deterrent. Deputy Greathead's testimony, however, does not support the inference relied upon by the Court of Appeals.

Deputy Greathead testified that when he first saw Robert he instructed him to raise his hands. Robert complied. But in describing Robert's actions at the time the bear deterrent was released, Deputy Greathead stated that Robert made one fluid motion to set down his beer and that the cloud appeared, right beside Robert, while part of Robert's arm was out of his sight. Although the Commonwealth argued at trial and on appeal that both of Robert's hands were raised, neither of the two witnesses who testified that they were present at the event, Deputy Greathead and Robert, stated that both of Robert's hands were raised at the time the bear deterrent was released. Therefore, the evidence contradicts, rather than supports, the inference relied upon by the Court of Appeals that Mark was hiding behind the water heater and released the bear deterrent "while Robert's hands were raised." Accordingly, the evidence does not

10

overcome the presumption of innocence and exclude all reasonable conclusions inconsistent with Mark's guilt. Similarly, Deputy Greathead's testimony that he could not say whether Mark was upstairs in the house at the time the bear deterrent was released because he had not conducted "a sweep" of the upstairs before he went into the basement does not overcome the presumption that Mark is innocent of releasing the bear deterrent because it does not place Mark in the basement at that time. Thus, it does not exclude all reasonable conclusions inconsistent with that of his guilt.

Last, any inference that Mark was in the basement and released the bear deterrent, based on his presence in the basement two hours later when the police entered the residence and took Mark and Robert into custody, is not based on an unbroken chain of necessary circumstances such that the whole of the evidence satisfies Mark's guilt to the exclusion of any other rational hypothesis and to a moral certainty. It is equally rational that Mark could have been in another room in the compartmentalized basement or a room upstairs when the bear deterrent was released. Therefore, the evidence that Mark was present in the basement two hours after Deputy Greathead was exposed to the bear deterrent is equally as susceptible to a finding consistent with his innocence as it is to a finding of guilt, and the jury could not "arbitrarily adopt that interpretation which incriminates [the accused]." *Burton*, 108 Va. at 899, 62 S.E. at 379. A finding of guilt based on this evidence is nothing more than improper suspicion and accordingly is insufficient to sustain a criminal conviction. *Stover*, 222 Va. at 624, 283 S.E.2d at 197.

The Commonwealth also argues that the evidence was sufficient to convict Mark of this offense as a principal in the second degree because the evidence showed he acted in concert with and in support of his brother, Robert, from the time they committed the petit larceny at the

Martin's grocery store to the time they both had to be physically restrained when the SWAT team entered the basement.

We disagree. This evidence proves only that Mark was present in the basement over two hours after the officer was exposed to the bear deterrent. Moreover, the record does not demonstrate that Mark was "present and shown to have procured, encouraged, countenanced or approved commission of the crime [and that he shared] the criminal intent of the actual perpetrator or [was] guilty of some overt act." *Hall v. Commonwealth*, 225 Va. 533, 536, 303 S.E.2d 903, 904 (1983). Therefore, we cannot say that the Commonwealth alternatively proved Mark's guilt of this offense as a principal in the second degree beyond a reasonable doubt.

Accordingly, we conclude the Commonwealth's evidence was insufficient to support Mark's conviction for felony malicious bodily injury by means of a caustic substance, in violation of Code § 18.2-52, and we will reverse the judgment of the Court of Appeals affirming Wright's conviction for that felony.

IV.     Assault and Battery of a Law Enforcement Officer and Obstruction of Justice

In his final assignments of error, Wright asserts that the evidence was insufficient to support his convictions for assault and battery of a law enforcement officer and obstruction of justice. The Court of Appeals' sole rationale for affirming these two convictions was that the evidence was sufficient to support the conclusion that Mark deployed the bear deterrent that injured Deputy Greathead and that act also supported the charges that Wright assaulted and battered a law enforcement officer and that the deployment of "gas as a weapon . . . constituted the use of force in an attempt to impede the police." *Wright*, 2014 Va. App. LEXIS 376, at *10 (unpublished). Because we have held that the evidence was insufficient to support Wright's conviction for felony malicious bodily injury to Deputy Greathead by use of a caustic substance,

12

as either a principal in the first or second degree, the rationale used by the Court of Appeals to affirm Wright's convictions for assault and battery of a law enforcement officer and obstruction of justice is no longer valid. Accordingly, we will reverse that part of the judgment of the Court of Appeals affirming those convictions.

CONCLUSION

For the foregoing reasons, we will affirm the judgment of the Court of Appeals sustaining Wright's conviction for larceny from the person. We will also reverse the judgment of the Court of Appeals affirming Wright's convictions of felony malicious bodily injury by use of a caustic substance, assault and battery of a law enforcement officer and obstruction of justice, vacate those convictions and enter final judgment thereon because the evidence on which those convictions are based is insufficient.

*Affirmed in part,*
*reversed in part,*
*and final judgment.*

JUSTICE McCLANAHAN, concurring in part and dissenting in part.

I concur in that part of the majority's holding in which it affirms the Court of Appeals' judgment sustaining Wright's conviction for larceny from the person. I disagree, however, with the majority's holding that the evidence was insufficient to support Wright's convictions of felony malicious bodily injury by use of a caustic substance, assault and battery of a law enforcement officer, and obstruction of justice. I would affirm the judgment of the Court of Appeals upholding those convictions for the reasons stated in its opinion, *Wright v.*

13

*Commonwealth*, Record No. 0585-13-3, 2014 Va. App. LEXIS 376, at *8-10 (Nov. 18, 2014) (unpublished).[*]

<hr />

[*] I do not believe Deputy Christopher Greathead's testimony established that both of Robert's hands were in the air and entirely visible to Deputy Greathead when the gas was released. And it is not clear to me that the Court of Appeals believed otherwise – the opinion does not suggest that only Wright could have released the gas. Regardless of whether one or both of Robert's hands were visible to Deputy Greathead when the gas was released, I agree with the Court of Appeals that "[t]here was ample circumstantial evidence . . . from which the jury could draw a reasonable inference that Wright was in the basement of the house and was an active participant in the crimes for which he was convicted." *Id.* at *8.