# COURT OF APPEALS OF VIRGINIA

## Record No. 0215-25-2

HARRY MEREDITH WILLIAMS

v.

COMMONWEALTH OF VIRGINIA

Present: Chief Judge Decker, Judges Beales and Athey

Opinion Issued June 9, 2026[*]

## FROM THE CIRCUIT COURT OF HENRICO COUNTY
Rondelle D. Herman, Judge

(Charles E. Haden, on brief), for appellant.

(Jason S. Miyares,[1] Attorney General; Liam A. Curry, Assistant Attorney General, on brief), for appellee.

## MEMORANDUM OPINION BY
## JUDGE CLIFFORD L. ATHEY, JR.

After a jury trial, the Circuit Court of Henrico County ("trial court") convicted Harry

Meredith Williams ("Williams") of possessing a firearm as a convicted felon. The trial court

sentenced Williams, who was previously convicted of a violent felony, to the mandatory-minimum

sentence of five years' incarceration. On appeal, Williams claims that the trial court erred: 1) by

denying his motions to strike because the evidence was insufficient to show that he constructively

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

possessed a firearm, and 2) by issuing a jury instruction on joint possession. Finding no error, we affirm the trial court's judgment.[2]

## I. BACKGROUND[3]

On October 10, 2023, officers from both the Henrico County and City of Richmond Police Departments performed a traffic stop of a blue Dodge sedan on Nine Mile Road in Henrico County. Although the vehicle was owned by Williams's girlfriend, Shaquanda Hill ("Hill"), Williams was driving the blue Dodge sedan while his friend Wiltor Fritz ("Fritz") was the sole passenger and sat in the front passenger seat. Law enforcement subsequently searched the vehicle, recovering two handguns that were a Glock 21 and a pistol commonly known as a "Draco."[4] A grand jury subsequently indicted Williams on one count of possessing a firearm as a felon, in violation of Code § 18.2-308.2(A), and the indictment did not specify which firearm Williams allegedly possessed. The matter then proceeded to a jury trial that began on June 6, 2024.

At trial, Henrico County Police Officer Kevin Robinette ("Officer Robinette") testified that as he approached the driver's side of the vehicle, he saw Williams "reaching around and

---

[2] Having examined the briefs and record in this case, the panel unanimously agrees that oral argument is unnecessary because "the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument." *See* Code § 17.1-403(ii)(c); Rule 5A:27(c).

[3] "[W]e recite the evidence below 'in the "light most favorable" to the Commonwealth, the prevailing party in the trial court.'" *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). This standard "requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

[4] The witnesses and parties refer to this firearm by various names, including a "AK [style] pistol," "Zastava . . . pistol," "Draco pistol," and "Drake." For ease of reference, we refer to the firearm as a "Draco."

moving around the car" but could not see exactly where Williams was reaching because the vehicle's rear windows were tinted. After Williams rolled down the driver's window, Officer Robinette directed him to roll down the backseat windows and turn off the vehicle, and Williams complied.

Officer Robinette also testified that when he asked for Williams's driver's license and registration, Williams reached back into the area between the front-passenger seat and backseat and "was digging down . . . [and] moving some stuff around looking for his identification." Officer Robinette further explained that as Williams searched for his license and registration, another officer told Williams to just provide his name, before directing Williams to exit the vehicle. Officer Robinette testified that he patted Williams down but did not seize any items from him during the pat down. Following another officer patting down Fritz, the officer recovered an ammunition magazine "for an AK" firearm.

Next, the Commonwealth called Richmond City Police Officer Garrick Danko ("Officer Danko"), who had searched the front passenger area of the sedan along with his colleague, Officer Dominic Colombo ("Officer Colombo"). Officer Danko testified that he began his search in the front passenger seat area but noted that "the glove box was locked." Officer Danko then testified that he was initially given a set of keys that he described as "a giant key chain of keys" but that not one of those keys unlocked the glove box. He also testified that he received a second set of keys from Officer Colombo, describing this new set of keys as "just the key fob" from which the glove-box key unsheathed. He testified that the key, once extracted from the fob, opened the glove box.[5] Officer Danko then recalled finding a Glock 21 handgun in the glove box, alongside of "a Glock magazine," and "court paperwork" underneath the Glock 21 handgun

_____

[5] Whether Williams possessed the key to the glovebox is disputed. As explained below, we need not resolve this dispute.

that was "from . . . July of 2023[] with . . . Williams'[s] name on it."  Officer Danko also testified

that he recovered Williams's cell phone and gave it to another officer at the scene.

The Commonwealth then called Officer Colombo, who testified that he began his search

on the front driver's side of the vehicle before moving to the rear passenger seat.  He also

recalled that the front passenger seatback was pushed far back into the rear seat area and that

once he raised the seatback, he found a Draco pistol "seated with the barrel facing down and the

grip facing up."  The bottom of the grip of the Draco faced toward the driver's side of the vehicle

and was "within reach of someone sitting in the driver's seat."  Officer Colombo also

acknowledged that, due to the front passenger seat being reclined, he "couldn't see [the Draco]

immediately when [he] went into the vehicle" but "once . . . [he] got to . . . the back, it appeared

as if [someone] could still reach [the Draco] from [the] driver['s] seat."

Next, the Commonwealth called Richmond City Police Officer John Black ("Officer

Black") who testified that he searched Williams's cellphone pursuant to a search warrant.  He

recalled Williams telling him "that nothing was on th[e] phone" before providing the access code

to him.  Officer Black also testified that, contrary to Williams's statement, he found multiple

conversations about firearms while searching the cellphone.

Officer Black then explained to the jury that in July of 2023, Williams had texted

someone saved in his contacts as "Jun" that he "need[ed] a strap,"[6] "need[ed] something asap,"

and he was looking to "buy."  Officer Black further testified that in August of 2023, Williams

asked Jun to "send [him] a pic of the Drake to show my man."  Officer Black described how in

response, Jun sent Williams "[a] photo of an AK style Draco firearm," "an identical firearm" to

the one "recovered in the vehicle."  Officer Black further opined that the Draco depicted in the

---

[6] Officer Black affirmed, by looking to "the way that th[e] phrase is used" in this case, that someone "refer[ed] to a firearm when someone talk[ed] about a strap."

photo bore many similarities to the one recovered at the scene, stating, "This [Draco] . . . has a muzzle break on it[,] which is identical in my opinion to the one that [wa]s recovered from th[e] traffic stop. The same thing with the grip. The grip is extremely identical with the finger inden[ta]tions as well as the color of it." Officer Black also described for the jury that the Draco in the photo had "a little discoloration at the rear of the bottom of the forward grip" that "[wa]s identical to the rub off of the Draco that [officers] recovered from the . . . traffic stop."

Officer Black added that in September of 2023, Williams had texted Hill about the Draco. Officer Black further testified that by this time, Jun was "locked up," and Williams texted Hill that he had Jun's "drake." He also recounted how another contact texted Williams around this time about picking up Jun's things, but Williams responded, "All I have is the drake," "no way I'm ready . . . to give [you] that," and "I'll give it to him when he get[s] a bond."

Finally, Officer Black testified concerning another text exchange that occurred eight days before the traffic stop in October of 2023, wherein Williams texted Hill to "not pull off" because his "tablet and drake [were] in [her] car."

The Commonwealth then entered Williams's prior felony convictions in evidence and rested its case-in-chief. Whereupon, Williams moved to strike the evidence, contending that the evidence showed only that he occupied the car and failed to demonstrate that he knowingly possessed either firearm. The trial court denied Williams's motion.

Hill and Fritz then testified in Williams's defense. Hill testified that she owned the Dodge sedan and, on the day of the stop, "gave the keys" for the Dodge sedan "to Fritz that morning" to have it serviced. She further testified that she did not give Williams permission to drive the sedan. Hill also testified that she owned the Glock 21 handgun, kept it in the locked glove box, and never told Williams that it was there or gave him permission to use it. She also alleged that she put Williams's paperwork in the glove box. On cross-examination, Hill admitted

that she did not accompany Fritz and Williams at all times before the traffic stop and that Williams had previously driven the Dodge sedan outside her presence.

Fritz testified that that he took Hill's Dodge sedan for an oil change accompanied by Williams on the day of the traffic stop. Fritz claimed that he had placed the Draco behind the passenger seat before picking up Williams. He further testified that he bought the Draco "from somebody off the street" and never told Williams the gun was in the car. He recalled that after they made a pit stop, Williams "jumped in the driver's seat" because he was late for a court appearance, after which officers pulled them over further down the block. Fritz also testified that he initially told officers he "didn't know whose gun it was," referring to the Draco officers recovered in the sedan. However, Fritz testified that after Williams was arrested, he told officers that, in fact, he owned the Draco. Fritz also conceded that he had been separately charged for concealing the Draco and had no proof that he bought the gun.

At the close of all the evidence, Williams renewed his motion to strike, which the trial court denied. The parties then discussed jury instructions with the trial court. Williams objected to the Commonwealth's proposed Jury Instruction 9, which provided: "Possession may be joint or several. Two or more persons may be in possession where each has the power of control and intends to exercise control jointly." Williams contended that it was not a model jury instruction and there was no evidence that he had the "intent to jointly possess a firearm." The Commonwealth responded that Williams "made an issue of ownership" and it was important to instruct the jury that multiple people could possess the guns, notwithstanding any questions about ownership. The trial court overruled Williams's objection and granted Jury Instruction 9 as proposed by the Commonwealth.

The trial court instructed the jury and, after closing arguments from counsel, the jury retired to deliberate and returned with their verdict, finding Williams guilty. Because Williams

- 6 -

had been previously convicted of a violent felony, the trial court sentenced Williams to the mandatory minimum sentence of five years' incarceration. Williams appealed.

## II. ANALYSIS

### A. *Standard of Review*

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). "Thus, 'it is not for this [C]ourt to say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion.'" *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (alterations in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)). The only relevant question for this Court on review "is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)).

In addition, "[w]e review a trial court's decisions in giving and denying requested jury instructions for abuse of discretion." *Holmes v. Commonwealth*, 76 Va. App. 34, 53 (2022) (quoting *Conley v. Commonwealth*, 74 Va. App. 658, 675 (2022)). "[I]n deciding whether a particular instruction is appropriate, we view the facts in the light most favorable to the proponent of the instruction." *Id.* (quoting *Cooper v. Commonwealth*, 277 Va. 377, 381 (2009)). "Our 'sole responsibility' in reviewing a challenge to jury instructions 'is to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'"

*Taylor v. Commonwealth*, 77 Va. App. 149, 166 (2023) (quoting *Molina v. Commonwealth*, 272 Va. 666, 671 (2006)).

B. *The evidence was sufficient to support Williams's conviction.*

Williams contends that the evidence failed to show that he possessed either the Glock 21 handgun or the Draco because his "mere presence in the vehicle [was] insufficient by itself" to establish possession. In support, he relies on Hill and Fritz's testimony, as well as the lack of any fingerprint or DNA evidence or eyewitness testimony proving that he possessed either firearm. Thus, Williams asserts here that the Commonwealth failed to exclude his reasonable hypothesis of innocence that he was "unaware" of the firearms and did not exercise dominion and control over them. We disagree.

It is unlawful for "any person who has been convicted of a felony . . . to knowingly and intentionally possess or transport any firearm."[7] Code § 18.2-308.2(A). "A conviction for the unlawful possession of a firearm can be supported exclusively by evidence of constructive possession; evidence of actual possession is not necessary." *Bolden v. Commonwealth*, 275 Va. 144, 148 (2008). To prove that a defendant constructively possessed a firearm, "the Commonwealth must present evidence of acts, statements, or conduct by the defendant or other facts and circumstances proving that the defendant was aware of the presence and character of the firearm and that the firearm was subject to his dominion and control." *Id.* (quoting *Rawls v. Commonwealth*, 272 Va. 334, 349 (2006)).

"Whether evidence is sufficient to prove constructive possession 'is largely a factual' question" that a trier of fact can resolve by relying on direct or circumstantial evidence. *McArthur v. Commonwealth*, 72 Va. App. 352, 368 (2020) (quoting *Smallwood v. Commonwealth*, 278 Va. 625, 630 (2009)); s*ee Finney v. Commonwealth*, 277 Va. 83, 89 (2009).

_____

[7] Williams does not dispute that he was previously convicted of a felony.

- 8 -

We do not view pieces of circumstantial evidence "in isolation," as "the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable [fact finder]' to conclude beyond a reasonable doubt that a defendant is guilty." *Rams v. Commonwealth*, 70 Va. App. 12, 27 (2019) (alteration in original) (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005)).

Here, a "rational trier of fact could have found" that Williams constructively possessed the Draco. *Barney*, 302 Va. at 97 (quoting *Sullivan*, 280 Va. at 676). Williams's text messages show he sought a firearm, procured it, and placed it in Hill's Dodge sedan. He texted Jun that he "need[ed] a strap," a common slang term for a firearm, and "need[ed] something asap." Later messages reveal that he obtained a Draco—the same type of firearm ultimately recovered—and was reluctant to part from the weapon. Then, a mere eight days before the stop, Williams reminded Hill that his "drake" was in her car. Read together, these messages indicate that Williams "was aware of the presence and character of the firearm" when he was driving the same car he previously identified as containing the Draco. *Bolden*, 275 Va. at 148 (quoting *Rawls*, 272 Va. at 349).

Furthermore, Officer Black corroborated this evidence by testifying that the Draco depicted in the text messages was "identical" to the Draco ultimately recovered during the traffic stop. He explained how discrete parts of each firearm matched—including the "muzzle break," the finger indentation on the grip, and the grip's discoloration—and he used those similarities to infer that the firearm Williams obtained from Jun was the firearm ultimately recovered by police officers. Such testimony supports the inference that Williams put the Draco in Hill's sedan and knew of its presence because it confirmed that the "drake" to which Williams referred in text messages was the same firearm officers recovered from the traffic stop. Accordingly, a trier of

- 9 -

fact could have concluded that the Draco officers recovered was the one that Williams knew, in advance, was in Hill's sedan. *See Pijor*, 294 Va. at 512.

In addition, the evidence showed that the Draco was within Williams's reach. After officers pulled Williams over, he—twice—reached into the area where officers subsequently found the Draco, evincing his ability to exert dominion over that area of the vehicle. His proximity to the Draco "is a circumstance probative of possession and may be considered as a factor in determining whether [Williams] possessed the firearm." *Bolden*, 275 Va. at 148. It is also notable that Williams first reached into that area when Officer Robinette was walking toward the vehicle. A rational trier of fact could have inferred this action as an attempt by Williams to conceal the Draco from view. *Cf. Clarke v. Commonwealth*, 32 Va. App. 286, 305 (2000) (holding that a defendant was aware of a firearm's presence in a vehicle when the defendant was the sole occupant and reached to the area where the firearm was found when an officer approached the vehicle). Hence, a rational trier of fact could infer from this conduct that Williams exercised "dominion and control" over the firearm. *Bolden*, 275 Va. at 148 (quoting *Rawls*, 272 Va. at 349).

Williams, however, contends that the Commonwealth still failed to exclude his hypothesis of innocence that "[he] was [un]aware of the presence of the Draco firearm lodged in the rear passenger seat of the [Dodge sedan]." He is mistaken.

"Circumstantial evidence is sufficient to convict if it excludes every reasonable hypothesis of innocence." *Lyons v. Petersburg*, 221 Va. 10, 13 (1980). "Properly understood, the reasonable-hypothesis principle is not a discrete rule unto itself. 'The statement that circumstantial evidence must exclude every reasonable theory of innocence is simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 249-50 (2016) (quoting *Commonwealth v. Hudson*, 265

Va. 505, 513 (2003)). But "[t]he reasonable hypothesis formulation only requires that a criminal defendant be acquitted when the evidence provides no reasonable basis for a factfinder choosing between two equally likely options: guilt, on the one hand, and innocence, on the other." *Cuffee v. Commonwealth*, ___ Va. ___, ___ (Apr. 16, 2026). This is because

> [i]f the mere existence of a theoretical possibility of an innocent explanation for the allegedly criminal conduct, no matter how unlikely or remote the factfinder finds that theoretical possibility to be, requires an acquittal, the Commonwealth's burden becomes to prove the elements of the offense beyond *all* doubt as opposed to beyond a *reasonable* doubt.

*Id.* at ___ n.7 (emphases added).

Hence, if the jury "*arbitrarily* adopt[s]" an interpretation of the evidence "which incriminates him," a defendant must be acquitted. *Id.* at ___ (quoting *Burton v. Commonwealth*, 108 Va. 892, 899 (1908)). But when "a jury *reasonably* rejects a proffered hypothesis of innocence, the hypothesis is not a reasonable one" and, thus, that rejection would not be "'plainly wrong.'" *Id.* (quoting *Lucas v. Commonwealth*, 75 Va. App. 334, 348 (2022)).

Here, the jury "reasonably reject[ed] [William's] proffered hypothesis of innocence." *Id.* (emphasis omitted). As delineated above, there was sufficient evidence to support the jury's conclusion that Williams was aware that the Draco was in the back of the sedan. Moreover, the jury was not required to credit Fritz's testimony. "The trier of fact is not required to accept a party's evidence in its entirety, but is free to believe or disbelieve, in whole or in part, the testimony of any witness." *English v. Commonwealth*, 43 Va. App. 370, 371 (2004) (citation omitted). In this case, the evidence at trial illustrated that Fritz made inconsistent statements to police officers about the Draco. Specifically, Fritz initially told officers—before Williams was arrested—that he "didn't know" who owned the Draco, but Fritz later claimed to officers that he owned it after Williams was arrested. In addition, Fritz testified that he had no proof that he bought the Draco, further casting doubt on Fritz's claims that he owned the Draco instead of

- 11 -

Williams. Accordingly, a rational trier of fact could have disregarded Fritz's testimony and found that it did not absolve Williams of guilt.

Plainly put, the jury considered Williams's hypothesis of innocence, with respect to the Draco, and did not "*arbitrarily* adopt" an interpretation of the evidence "which incriminate[d] [Williams]." *Cuffee*, ___ Va. at ___ (quoting *Burton*, 108 Va. at 899). Hence, based on the record, the jury's rejection of Williams's hypothesis of innocence was not "plainly wrong." *Id.* As a result, a "rational trier of fact could have found" that Williams constructively possessed the Draco.[8] *Barney*, 302 Va. at 97 (quoting *Sullivan*, 280 Va. at 676). So we hold that the trial court did not err in denying Williams's motions to strike because the evidence was sufficient to support his conviction.

C. *The trial court did not err by giving Jury Instruction 9.*

Williams further contends that the trial court erred in permitting Jury Instruction 9 to be given to the jury because there was no evidence that he had the "intent to jointly possess a firearm."[9] We disagree.

_____

[8] Given this finding, we do not reach whether the evidence was sufficient to find that Williams possessed the Glock 21 handgun. *See Thomas v. Commonwealth*, 303 Va. 188, 198 (2024) ("The doctrine of judicial restraint dictates that generally we decide cases 'on the best and narrowest grounds available.'" (quoting *McGhee v. Commonwealth*, 280 Va. 620, 626 n.4 (2010))).

[9] To the extent Williams claims that Jury Instruction 9 was improper because it was not a model jury instruction, we find that challenge unpersuasive. *See* Code § 19.2-263.2 ("A proposed jury instruction submitted by a party, which constitutes an accurate statement of the law applicable to the case, shall not be withheld from the jury solely for its nonconformance with model jury instructions.").

Williams also argues that the instruction was cumulative, redundant, placed an unwarranted emphasis on a single aspect of the case, and would tend to confuse or mislead the jury. These arguments were not made to the trial court. "[M]aking one specific argument on an issue does not preserve a separate legal point on the same issue for [appellate] review." *Ray v. Commonwealth*, 74 Va. App. 291, 306 (2022) (alterations in original) (quoting *Hicks v. Commonwealth*, 71 Va. App. 255, 266 (2019)); *see also* Rule 5A:18. Accordingly, we do not consider these unpreserved arguments. *See Ray*, 74 Va. App. at 305-07 (holding that arguing that a witness's "testimony [was] . . . impeached is not the same as arguing that the testimony

- 12 -

"[J]ury instructions are proper only if supported by the evidence, and more than a scintilla of evidence is required." *Watson v. Commonwealth*, 298 Va. 197, 207 (2019) (quoting *Payne v. Commonwealth*, 292 Va. 855, 869 (2016)). "This Court has avoided establishing a precise definition for the term 'scintilla' because to do so would be 'neither practical nor helpful.'" *Williams v. Commonwealth*, 64 Va. App. 240, 247 (2015) (quoting *Brandau v. Commonwealth*, 16 Va. App. 408, 411 (1993)). Instead, what constitutes a scintilla of evidence is decided on a "case-by-case basis." *Edwards v. Commonwealth*, 65 Va. App. 655, 662-63 (2015) (quoting *Woolridge v. Commonwealth*, 29 Va. App. 339, 348 (1999)).

Here, there was more than a scintilla of evidence supporting Jury Instruction 9. As outlined above, the evidence showed that the Draco was within Williams's reach in the open passenger area of the vehicle, and Williams reached into that same area when Officer Robinette approached the vehicle. Williams also reached into that area when searching for his identification, and he had previously texted Hill to keep a Draco in her car. Williams was not alone when officers pulled him over—Fritz was in the front-passenger seat and claimed to own the Draco. Beyond Fritz's presence and statements, Williams also made ownership an issue throughout the trial to try and vitiate his possession of the Draco with the fact that someone else may have owned, or had control over, the Draco.

Under these circumstances, there could be multiple people in possession of the Draco. *See Hunter v. Commonwealth*, 56 Va. App. 50, 61 (2010) (holding that a defendant was in joint constructive possession of a firearm in a vehicle's glove box when he knew the firearm was there but another person in the vehicle had locked the glove box). This amounts to more than a

was inherently incredible as a matter of law" and, consequently, that an inherent-incredibility argument was not preserved for appeal). Williams "has not invoked either exception to Rule 5A:18, and we do not consider them *sua sponte*." *Spanos v. Taylor*, 76 Va. App. 810, 827-28 (2023).

scintilla of evidence to justify Jury Instruction 9.  Accordingly, the trial court did not abuse its

discretion in issuing the instruction.  *See Holmes*, 76 Va. App. 53.

<h3 style="text-align:center">III.  CONCLUSION</h3>

For these reasons, the trial court's judgment is affirmed.[10]

*Affirmed and remanded.*

---

[10] The sentencing order states that the offense date was February 24, 1981, which is Williams's date of birth.  But the record establishes that the actual offense date was October 10, 2023.  We therefore remand the case to the trial court for the sole purpose of correcting the clerical error in the sentencing order.  *See* Code § 8.01-428(B); *Bagley v. Commonwealth*, 73 Va. App. 1, 30 n.10 (2021).