# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.: 2019AP629

†Petition for Review filed

Complete Title of Case:

**JAMA I. JAMA,**

      **PLAINTIFF-APPELLANT,**

  **V.**

**JASON C. GONZALEZ AND WISCONSIN LAWYERS
MUTUAL INSURANCE COMPANY,**

      **DEFENDANTS-RESPONDENTS.†**

| | |
|---|---|
| Opinion Filed: | December 10, 2020 |
| Submitted on Briefs: | September 6, 2019 |

| | |
|---|---|
| JUDGES: | Blanchard, Kloppenburg, and Nashold, JJ. |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *David J. Lang* and *Kevin G. Raasch* of *Judge Lang & Katers, LLC*, Wauwatosa. |
| Respondent ATTORNEYS: | On behalf of the defendants-respondents, the cause was submitted on the brief of *Peyton B. Engel*, of *Hurley Burish S.C.*, Madison. |

COURT OF APPEALS
DECISION
DATED AND FILED

December 10, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP629**

**STATE OF WISCONSIN**

Cir. Ct. No. **2018CV1478**

**IN COURT OF APPEALS**

---

JAMA I. JAMA,

PLAINTIFF-APPELLANT,

V.

JASON C. GONZALEZ AND WISCONSIN LAWYERS MUTUAL INSURANCE COMPANY,

DEFENDANTS-RESPONDENTS.

---

APPEAL from an order of the circuit court for Dane County: VALERIE BAILEY-RIHN, Judge. *Reversed and cause remanded*.

Before Blanchard, Kloppenburg and Nashold, JJ.

¶1 KLOPPENBURG, J. This appeal presents the issue of whether a former criminal defendant may, as a plaintiff, sue his or her former criminal defense attorney for legal malpractice when that plaintiff alleges that he or she can show actual innocence as to *some, but not all*, of the criminal charges in the

underlying criminal case, and the civil complaint alleges that the former defense attorney provided negligent representation *only* as to the charges as to which the criminal malpractice plaintiff alleges that he or she can show actual innocence. This issue involves what we refer to as criminal malpractice plaintiffs' claims of "split innocence," an issue that, as we will explain, has not yet been specifically addressed by controlling case law.[1]

¶2 On appeal, Jama argues that Wisconsin case law requires that he be able to prove his innocence *only* for the specific criminal charges as to which he alleges his former criminal attorney performed negligently. Based on our review of that case law, we agree and, therefore, we reverse and remand for further proceedings.

## BACKGROUND

¶3 Jama I. Jama, the criminal malpractice plaintiff in this case, filed this legal malpractice action.[2] We first summarize the allegations in his civil complaint and then the proceedings that followed his filing of that complaint.

---

[1] We use the phrase "criminal malpractice plaintiff" to refer to Jama and any other person who formerly faced criminal charges and now pursues civil remedies against his or her criminal defense counsel. *See Humphries v. Detch*, 712 S.E.2d 795, 800 n.5 (W. Va. 2011) (citing cases explaining that the term "criminal malpractice" refers to "legal malpractice in the course of defending a client accused of a crime") (quoted sources omitted); *Barker v. Capotosto*, 875 N.W.2d 157, 161 n.2 (Iowa 2016) ("The term 'criminal malpractice' has been used to describe a legal malpractice action brought by a former criminal defendant against his or her former criminal defense attorney.").

[2] The Honorable Ellen K. Berz presided over the criminal proceedings and the Honorable Valerie Bailey-Rihn presided over the civil action.

¶4    After Jama was criminally charged with sexual assault, burglary, and theft, he hired attorney Jason C. Gonzalez as his defense counsel. Jama told Gonzalez that he had committed the theft as charged in the criminal complaint, but that he had not committed the other crimes charged, including the two sexual assault charges. Jama asserted his innocence as to the sexual assault charges at that time, and has continued to do so since then.

¶5    The civil complaint further alleges that, during the criminal jury trial, Gonzalez made numerous errors, including not meeting with Jama until the third day of trial after both sides rested, and not asking Jama details about the case until after the trial was completed, when sentencing was impending.

¶6    The jury found Jama guilty of four felonies (second-degree sexual assault, third-degree sexual assault, and two charges of burglary) and one misdemeanor (theft).[3]

¶7    While serving time related to his sexual assault convictions, Jama, through new counsel, filed a postconviction motion for a new trial on the basis of ineffective assistance of counsel by Gonzalez in connection with the trial. After a *Machner* hearing,[4] the circuit court vacated all convictions based on Gonzalez's

---

[3] More specifically, the jury found Jama guilty of sexual assault of an intoxicated victim, sexual assault without consent, burglary with intent to commit a felony, burglary with intent to steal, and misdemeanor theft. The circuit court subsequently vacated the two burglary convictions for lack of evidence, and on appeal in the criminal case this court affirmed. *See State v. Jama*, No. 2014AP2432, unpublished slip op. ¶¶5, 10, 30-35 (WI App Feb. 25, 2016). In this present civil case, the circuit court's decision and the parties' appellate briefing address Jama's malpractice claims as pertaining only to the two sexual assault convictions. Therefore, we do not refer to the burglary charges or convictions again; they are not counts of conviction and Jama does not base this civil action on them.

[4] *See State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

ineffective assistance and ordered a new trial. This was based on findings by the court that:

> [Jama] had no one to advocate for his version of events as [Gonzalez] intentionally did not speak with him, intentionally did not investigate the facts in [Jama's] possession and intentionally did not incorporate [Jama's] version into the defense theory … [Gonzalez] chose to make up "facts" which had no nexus to the facts known by [Jama], which had little to no support in the evidence, and which were internally conflicting.

¶8      The State subsequently moved to dismiss all of the original charges against Jama except the misdemeanor theft charge, and issued a new charge of misdemeanor resisting or obstructing an officer. Jama, represented by his same postconviction counsel, pleaded guilty to both theft and resisting or obstructing. For these two convictions, the circuit court sentenced Jama to nine months in jail, "deeming time served."[5]

¶9      The complaint further alleges that, as a result of Gonzalez's negligent representation at trial, Jama suffered damages including the loss of his "civil liberties and freedoms." Specifically, before the circuit court granted the postconviction motions and Jama entered the misdemeanor pleas, he served over two and one-half years in prison, and was ordered to complete an Alcohol and Other Drug Abuse assessment, maintain absolute sobriety, not enter an

---

[5] The parties neither referred to the newly added obstruction charge in their arguments before the circuit court nor refer to it now in their arguments on appeal, and no details as to the basis for the charge and Jama's plea to it exist in the appellate record or in the Circuit Court Automated Programs site. We note that the obstruction charge was added after Gonzalez had concluded his representation of Jama, and that Jama accordingly does not allege injury related to that charge. Following the parties, we do not refer to the obstruction charge or conviction again in this opinion or consider it in our analysis, and for ease of reference we speak in terms of Jama's plea as if it were to the misdemeanor theft only.

establishment whose purpose is the sale of alcohol, report for the sex offender registry list for life, and not appear on State Street in Madison for six years.

¶10 We now move from the allegations in Jama's complaint to summarize what took place after Jama filed this action against Gonzalez. Gonzalez moved to dismiss the complaint on the basis that Jama's allegations, even if true, do not entitle Jama to relief. The gravamen of Gonzalez's argument was that, because Jama pleaded guilty to the theft charge after his convictions were vacated and a new trial was ordered, Jama could not prove that he was innocent of *all* charges, as required to pursue this civil action under the "actual innocence" rule stated in then controlling case law, specifically *Hicks v. Nunnery*, 2002 WI App 87, 253 Wis. 2d 721, 643 N.W.2d 809, and *Tallmadge v. Boyle*, 2007 WI App 47, 300 Wis. 2d 510, 730 N.W.2d 173.

¶11 In response, Jama asserted that this malpractice action addresses only Gonzalez's negligent representation of Jama on the sexual assault charges, that Jama suffered damages from the sexual assault convictions, and that Jama is able to prove, and has always maintained, his innocence of the sexual assault charges. Jama's position was that this action alleges negligence in connection with the sexual assault convictions only and does not allege negligence in connection with the misdemeanor theft charge to which he pleaded guilty.

¶12 The circuit court granted Gonzalez's motion to dismiss, stating that, under *Hicks* and *Tallmadge*, Jama has to provide "proof of innocence of all charges" that were charged in the underlying criminal case. The court ruled, "because Mr. Jama pled guilty to the theft charge, even though he … has always claimed that he was innocent of the sexual assault charges … [Gonzalez has] prevailed on [his] motion to dismiss."

¶13 Jama appealed. After the parties filed their appellate briefs, the Wisconsin Supreme Court accepted review in *Skindzelewski v. Smith*, 2020 WI 57, 392 Wis. 2d 117, 944 N.W.2d 575, in which the criminal malpractice plaintiff sought an exception to the "actual innocence" rule adopted by this court in *Hicks* to allow him to pursue his legal malpractice claim premised on former defense counsel's failure to raise a valid statute of limitations defense. *Skindzelewski*, 392 Wis. 2d 117, ¶2. After the supreme court issued its decision in *Skindzelewski*, in which it for the first time addressed and relied on the actual innocence rule adopted in *Hicks* to decline to recognize the exception to that rule as requested by Skindzelewski, *id.* at ¶¶2, 21-23, this court certified the split innocence issue raised in this case to the supreme court for its review and determination. The supreme court has now denied the certification request. Accordingly, we now proceed to address the split innocence issue raised in this case.[6]

## DISCUSSION

### I. Standard of Review and Legal Principles

¶14 "A motion to dismiss for failure to state a claim tests the legal sufficiency of the complaint." *Data Key Partners v. Permira Advisers LLC*, 2014 WI 86, ¶19, 356 Wis. 2d 665, 849 N.W.2d 693 (quoted source omitted). "Upon a motion to dismiss, we accept as true all facts well-pleaded in the complaint and the

---

[6] As we explain in this opinion, the questions raised by the parties based on the Court of Appeals' decisions in *Hicks v. Nunnery*, 2002 WI App 87, 253 Wis. 2d 721, 643 N.W.2d 809, and *Tallmadge v. Boyle*, 2007 WI App 47, 300 Wis. 2d 510, 730 N.W.2d 173, were not addressed by the supreme court in *Skindzelewski v. Smith*, 2020 WI 57, 392 Wis. 2d 117, 944 N.W.2d 575. For this reason, we did not order the parties to submit additional briefing based on the *Skindzelewski* court's affirmation of the *Hicks* and *Tallmadge* actual innocence rule.

reasonable inferences therefrom." *Id.* (citing *Kaloti Enters., Inc. v. Kellogg Sales Co.*, 2005 WI 111, ¶11, 283 Wis. 2d 555, 699 N.W.2d 205). Whether a complaint adequately pleads a cause of action is a question of law we review de novo. *Hermann v. Town of Delavan*, 215 Wis. 2d 370, 378, 572 N.W.2d 855 (1998).

¶15 In Wisconsin, all plaintiffs alleging legal malpractice must prove four elements in order to prevail: "(1) an attorney-client relationship existed; (2) the attorney's actions were negligent; (3) the attorney's negligent actions caused the client's injury; and (4) the client suffered an actual injury." *Skindzelewski*, 392 Wis. 2d 117, ¶9. Citing *Hicks*, the court in *Skindzelewski* stated that, in a criminal malpractice case, the plaintiff "must additionally prove that he [or she] was actually innocent of the criminal charge as a component of the causation element." *Id*. *See also* *Tallmadge*, 300 Wis. 2d 510, ¶¶21-22 (applying the actual innocence rule to criminal malpractice claims against postconviction counsel).

## II. Analysis

¶16 The parties here do not dispute that, in Wisconsin, the actual innocence rule applies to all criminal malpractice plaintiffs. However, as stated above, the parties dispute how to resolve the specific split innocence issue under the reasoning and language of controlling Wisconsin case law. Gonzalez asserts that the case law supports his argument that Jama, as the criminal malpractice plaintiff in this case, has to prove innocence as to all charges of which Jama was convicted. Jama asserts that the case law supports his argument that it is sufficient to allege that he can prove innocence only as to those charges for which he alleges that his former defense counsel provided negligent representation, even if he

cannot prove innocence on one or more other charges. As we explain, we agree with Jama.

¶17 We first discuss pertinent details of the Wisconsin Court of Appeals' *Hicks* and *Tallmadge* decisions and the Wisconsin Supreme Court's *Skindzelewski* decision, explaining how public policy considerations identified in each of those opinions support adoption of the actual innocence rule and how those considerations apply to support Jama's position in the split innocence situation presented in this case. We then explain why we reject Gonzalez's arguments to the contrary.

*A. Wisconsin Precedent:  **Hicks**, **Tallmadge**, and **Skindzelewski**.*

1. ***Hicks v. Nunnery**, 2002 WI App 87, 253 Wis. 2d 721, 643 N.W.2d 809.*

¶18 We begin with the Court of Appeals' decision in *Hicks*, which adopted the actual innocence rule that was relied on by the supreme court in *Skindzelewski*.

¶19 Hicks was convicted and imprisoned on charges of robbery, burglary, and sexual assault. *Hicks*, 253 Wis. 2d 721, ¶3. Hicks consistently maintained his innocence as to all three charges. *Id.*, ¶37. On appeal, the court reversed all three of Hicks' convictions because Hicks had been denied effective assistance of trial counsel. *Id.*, ¶3. The Wisconsin Supreme Court affirmed as to all three charges, but on the ground that the real controversy had not been fully tried as to any charge. *Id.*

¶20 The State subsequently "dropped all charges against Hicks." *Id.*, ¶12. Hicks then filed a legal malpractice suit against his former trial counsel, Attorney Nunnery. *Id.*, ¶13. The civil jury found that Hicks would have been

9

found not guilty on all charges at his criminal trial had it not been for Nunnery's negligent representation. *Id.*, ¶¶13, 34. Nunnery appealed, arguing that he was entitled to judgment in his favor because Hicks failed to prove his innocence on all charges. *Id.*, ¶¶1, 32.

¶21 Following the reasoning and considerations of "public policy" adopted by the California Supreme Court in *Wiley v. County of San Diego*, 966 P.2d 983 (Cal. 1998), the court in *Hicks* concluded, "[A]s a matter of public policy, persons who actually commit the criminal offenses for which they are convicted should not be permitted to recover damages for legal malpractice from their former defense attorneys." *Id.*, ¶¶39-46, 48. Accordingly, the *Hicks* court held that, in addition to proving the four elements of a standard legal malpractice claim listed above, public policy considerations require that a criminal malpractice plaintiff may not prevail without also proving to the civil jury that he or she "is innocent of the charges of which he [or she] was convicted." *Id.*, ¶46. Because the actual innocence issue had not been resolved in the circuit court, the court of appeals remanded the case for a new trial "limited to the issue of whether Hicks committed the offenses of which he was convicted." *Id.*, ¶¶46, 56.

¶22 The *Hicks* court identified five specific public policy considerations relied on by the California court in *Wiley* that supported its adoption of the actual innocence rule for criminal malpractice plaintiffs. We now quote them at length:

> 1. Permitting a convicted criminal to pursue a legal malpractice claim without requiring proof of innocence would ... shock the public conscience, engender disrespect for courts and generally discredit the administration of justice.
>
> 2. Allowing civil recoveries to guilty plaintiffs impermissibly shifts responsibility for the crime away from the convict.... Regardless of the attorney's negligence, a guilty defendant's conviction and sentence are the direct

consequence of his [or her] own perfidy.… [W]hile a conviction predicated on incompetence may be erroneous, it is not unjust.

3. Tort law provides damages only for harms to the plaintiff's legally protected interests, and the liberty of a guilty criminal is not one of them. The guilty criminal may be able to obtain an acquittal if he [or she] is skillfully represented, but he [or she] has no *right* to that result…

4. Even in cases where the causal link between an attorney's negligence and a client's erroneous imprisonment is most obvious (such as where the attorney fails to bring a clearly meritorious motion to suppress evidence that establishes guilt, which the state could not prove without it), civil recovery by a guilty plaintiff is not warranted because of the nature and function of the constitutional substructure of our criminal justice system. That is, [certain] features of the criminal justice system … and other constitutional protections are to safeguard against conviction of the wrongly accused and to vindicate fundamental values. They are not intended to confer any direct benefit outside the context of the criminal justice system. Thus, defense counsel's negligent failure to utilize them to secure an acquittal or dismissal for a guilty defendant does not give rise to civil liability.

5. Unlike victims of legal malpractice in a civil context, who most often have no redress except a recovery from the negligent attorney, wrongfully convicted criminal defendants have the opportunity to rectify the wrong by asserting their Sixth Amendment right to effective assistance of counsel. Not only does the Constitution guarantee this right, any lapse can be rectified through an array of postconviction remedies, including appeal and habeas corpus. Such relief is afforded even to those clearly guilty as long as they demonstrate incompetence and resulting prejudice…

*Hicks*, 253 Wis. 2d 721, ¶¶40-44 (emphasis added) (internal quotation marks and citations omitted).

¶23 Because the facts in *Hicks* did not raise the issue, this court did not in that case address whether the requirement that a criminal malpractice plaintiff prove that he or she "is innocent of the charges of which he [or she] was

11

convicted" applies to all charges in the criminal case or only to those that are the subject of the malpractice action. *Id.*, ¶46. To repeat, Hicks alleged that trial counsel was negligent as to all of the charges on which trial counsel represented Hicks, and that Hicks had consistently maintained his innocence as to all of those charges. *Id.*, ¶¶3, 37. Here, however, as stated, Jama alleges negligence and maintains his innocence only in connection with the sexual assault convictions and does not allege negligence in connection with the misdemeanor theft charge to which he eventually pleaded guilty.

¶24 We discern no suggestion in *Hicks* that the values embodied in the adopted policy considerations would be undermined if, as here, the criminal malpractice plaintiff were able to recover based strictly on negligence resulting in conviction for conduct for which the plaintiff claims actual innocence—here, sexual assault. More specifically, none of the five policy considerations, which all concern "guilty" defendants, appear on their face to apply here, where Jama alleges that he can prove he is not guilty. The *Hicks* court stressed that it was adopting the actual innocence rule because "as a matter of public policy, persons who actually commit the criminal offenses for which they are convicted should not be permitted to recover damages for legal malpractice from their former defense attorneys." *Id.*, ¶48. That public policy is not served when a person did not actually commit the criminal offenses that are the subject of the malpractice action.

¶25 As for the only criminal conduct of which Jama stands convicted, he would neither profit from that conduct nor escape punishment for it. However, Jama has not been afforded the opportunity to seek full relief for the damages caused by his attorney's alleged negligence as to the vacated convictions for charges of which Jama claims he is innocent.

¶26  Thus, we conclude that allowing Jama to proceed with his claims in this split innocence situation is consistent with the actual innocence rule adopted in *Hicks* and with the policy considerations relied on by the *Hicks* court in support of that rule.[7]

2. *Tallmadge v. Boyle*, 2007 WI App 47, 300 Wis. 2d 510, 730 N.W.2d 173.

¶27  We now turn to *Tallmadge*, in which the Court of Appeals relied on the actual innocence rule adopted in *Hicks*. *Tallmadge*, 300 Wis. 2d 510, ¶12.

¶28  Tallmadge was sentenced to 265 years in prison after being found guilty of fifteen counts of sexual assault. *Id.*, ¶2. He subsequently retained an attorney, Attorney Boyle, to consult with his trial attorney on a direct appeal. *Id.*, ¶¶3-5. After the appeal was unsuccessful, Tallmadge directed Attorney Boyle to seek habeas corpus relief for Tallmadge, but Tallmadge was unsatisfied with Boyle's drafted writ and later fired him. *Id.*, ¶¶6, 16-17. Tallmadge then retained a new appellate attorney, Attorney Sutton, who filed a federal writ of habeas corpus raising three issues as to all of the fifteen counts, and two issues specifically as to two of the counts. *Id.*, ¶7. Thus, if Sutton's efforts had been in any way successful, there were potential pathways to complete reversal but also potential pathways to only partial reversal. However, the writ filed by Attorney

---

[7] We note that in his concurrence in *Tallmadge*, Judge Fine summarizes the *Hicks* rule as follows: "[A] convicted defendant cannot recover against his or her lawyer for legal malpractice that allegedly caused the defendant's conviction unless the defendant can show by the civil burden of proof that he or she was actually innocent of the crime and, also, that the lawyer's malpractice was a cause of the conviction." *Tallmadge*, 300 Wis. 2d 510, ¶32, citing the reasoning of *Hicks*, 253 Wis. 2d 721, ¶¶34-50. Judge Fine's use of the singular "conviction" and "crime" though not binding, supports our reading of *Hicks*, requiring only proof of innocence for each specific criminal charge as to which the criminal malpractice plaintiff alleges his or her former defense attorney performed negligently.

Sutton was dismissed because it was not timely filed. *Id.*, ¶8. Tallmadge subsequently brought a legal malpractice suit against Boyle for failing to file a state or federal writ of habeas corpus. *Id.*, ¶¶10, 16. The circuit court granted Boyle's motion for summary judgment dismissing the complaint. *Id.*, ¶12. Applying the *Hicks* actual innocence rule, the court stated, "There is no evidence in this record, other than Mr. Tallmadge's assertion, that he is innocent." *Id.*

¶29 The court of appeals affirmed, stating that the same public policy considerations supporting the actual innocence rule adopted in *Hicks* "apply equally to cases involving criminal defense attorneys hired to represent criminal defendants after conviction." *Id.*, ¶¶21-22. The court also stated that these public policy considerations require that the criminal malpractice plaintiff must "prove that 'but for' that defense counsel's actions, the convicted criminal would be free." *Id.*, ¶22. The court also broadly stated that, before Tallmadge could be entitled to "a get out of jail free card," he would have to "prov[e] to a jury that [he] is innocent of all fifteen counts for which he was convicted." *Id.*, ¶19. The court explained that, because none of Tallmadge's appellate attorneys had been able to develop any meritorious claims in Tallmadge's criminal case as to any of the fifteen convictions, let alone all of them, any assertion that Boyle, specifically, would have secured Tallmadge's freedom was "purely speculative." *Id.*, ¶¶18-19. Thus, it appears that the *Tallmadge* court approached the case as if all fifteen convictions were both the subject of the malpractice action as well as the subject of Tallmadge's unsupported assertion of innocence, despite a lack of clarity on this and other issues as summarized in the case.

¶30 The *Tallmadge* court reiterated the public policy considerations identified in *Hicks*, highlighting as the primary policy consideration the view that "[p]ermitting a convicted criminal to recover in a legal malpractice action against

former defense counsel would result in the criminal being indirectly rewarded for the crimes." *Id.*, ¶22 (citing *Hicks*, 253 Wis. 2d 721, ¶38).

¶31 As with *Hicks*, we discern nothing in the *Tallmadge* court's discussion of this concern or the other policy considerations to suggest that a criminal malpractice plaintiff cannot recover for negligent representation as to crimes that the plaintiff alleges the plaintiff can show he or she did not commit.

¶32 Thus, we conclude that nothing in *Tallmadge* disturbs our determination that allowing Jama to proceed with his claims in this split innocence situation is consistent with the actual innocence rule adopted in *Hicks* and with the policy considerations relied on by the *Hicks* court in support of that rule.

3. *Skindzelewski v. Smith*, 2020 WI 57, 392 Wis. 2d 117, 944 N.W.2d 575.

¶33 Finally, the Wisconsin Supreme Court in *Skindzelewski* affirmed the *Hicks* actual innocence rule, stating that the rule "requires a criminal [malpractice plaintiff] to establish [that he or she] did not commit the crime of which he [or she] was convicted." *Skindzelewski*, 392 Wis. 2d 117, ¶2. Skindzelewski, the criminal malpractice plaintiff, conceded his guilt as to his underlying offense of "theft by contractor," but sought an exception to the actual innocence rule because his attorney had negligently failed to raise a statute of limitations defense that would have precluded his conviction. *Id.*, ¶¶1-3, 17. The court declined to establish such an exception to the actual innocence rule, stating that the exception that Skindzelewski sought would be contrary to public policy considerations and would "reward criminality." *Id.*, ¶¶2, 22. The court explained that "[t]he law bars such legal malpractice claims because even if an attorney's negligence harms a defendant by adversely affecting the outcome of the case, attorney error does not negate a guilty defendant's culpability." *Id.*, ¶17.

¶34 The court's opinion in *Skindzelewski* confirms the actual innocence rule adopted in *Hicks* and also contains language that supports our conclusion that, on the facts of Jama's split innocence situation, proof of Jama's actual innocence of the charges as to which he alleges legal malpractice falls within the actual innocence rule. We reach this conclusion for three reasons.

¶35 First, the supreme court states that Skindzelewski's claim "rests on a legal error that would have precluded his conviction notwithstanding his guilt." *Id.*, ¶17. In contrast, Jama alleges that his injury is "entirely unrelated to [his] criminal behavior" and rests on legal errors that led to a conviction as to which he asserts his innocence. *Id.*, ¶18.

¶36 Second, the analysis in *Skindzelewski* echoes the focus in *Hicks* on supporting the actual innocence rule with considerations of public policy. Throughout, the court uses language such as "actually guilty," "culpable behavior," and "the guilty" in support of its determination to avoid "rewarding criminality." *Id.*, ¶¶17, 23. The court also emphasizes that "the defendant … bears ultimate responsibility for his [or her] criminal conduct." *Id.*, ¶17. In contrast, Jama contends that he does not seek reward for his criminality, but seeks damages for injury caused by Gonzalez's legal representation regarding offenses that Jama has always asserted he did not commit. The *Skindzelewski* court reasons:

> Despite [Skindzelewski's] guilt, the law afforded Skindzelewski a remedy for the erroneous conviction—namely, his liberty. The law does not, however, give him an additional monetary remedy against his negligent lawyer. Doing so would be tantamount to rewarding this guilty defendant for his crime, which 'would … shock the public conscience, engender disrespect for courts and generally discredit the administration of justice.'

16

*Id.*, ¶22, (quoting ***Hicks***, 253 Wis. 2d 721, ¶40). Here, however, Jama seeks damages for his imprisonment on sexual assault charges that he alleges he can prove he was innocent of, so a damages award would not "reward a guilty defendant for his crime." *Id.*

¶37 Third, ***Skindzelewski*** states that attorney error does not "sever[] the causal link between a criminal defendant's culpable behavior and the time spent incarcerated, when the criminal defendant is *actually guilty.*" *Id.*, ¶17 (emphasis added) "In contrast, if a defendant … serves the maximum time authorized by statute for his [or her] criminal conduct but then serves additional time as a result of his [or her] attorney's error, the additional time of incarceration is causally unconnected to the antecedent criminality." *Id.*, ¶18. Here, if Jama serves the maximum time authorized by statute for his admitted misdemeanor theft conduct, but then serves additional time as a result of sexual assault convictions that resulted from his attorney's negligence, and as to which he alleges he can prove his innocence, the additional time of his incarceration is unconnected to any criminal behavior on Jama's part.

¶38 In sum, we conclude that, under the ***Skindzelewski*/*Hicks*/*Tallmadge*** actual innocence rule, the circuit court erroneously dismissed Jama's complaint because Jama claims actual innocence as to the vacated sexual assault convictions that form the basis of his malpractice claims in that complaint.

*B. Gonzalez's Arguments Do Not Persuade.*

¶39 We now address and reject Gonzalez's arguments to the contrary.

¶40 First, Gonzalez argues that "***Hicks*** does not establish that a malpractice plaintiff who has entered a guilty plea is entitled to trial." This

argument misses its target, because Jama does not allege negligent representation or seek relief as to the theft charge to which he pleaded guilty. Rather, Jama alleges that Gonzalez provided negligent representation, causing significant injury, only as to the two charges that led to Jama's subsequently-vacated sexual assault convictions.

¶41 Second, Gonzalez argues that, under *Tallmadge*, a criminal malpractice plaintiff must prove innocence as to all charges on which the plaintiff was convicted, and that Jama cannot do so because he pleaded guilty to theft, one of the underlying charges on which Gonzalez represented him. This argument also misses its target, because, as noted above, *Tallmadge* does not address a split innocence situation. Rather, in that case, the court observed that Tallmadge had not shown that his appellate counsel could successfully challenge any of his 15 convictions or that he could prove he was innocent of any of those charges. *See Tallmadge*, 300 Wis. 2d 510, ¶¶18-19.

¶42 To the extent that Gonzalez may be basing his argument on the *Tallmadge* court's use of the "would be free" language noted above, such a basis is not clearly supported by the *Tallmadge* decision itself. As explained above, the court focused on the policy consideration that a convicted criminal should not be rewarded for his or her criminal conduct, citing *Hicks*. *Tallmadge*, 300 Wis. 2d 510, ¶22. That policy consideration is not undermined in a split innocence situation when, as here, the claim is based on actual innocence of specific charges. Moreover, the court's "would be free" statement and the accompanying discussion are not supported by citation to authority. *Tallmadge*, 300 Wis. 2d 510, ¶¶18-19, 20-22. From the surrounding discussion, it appears that the court may have been conflating the "would be free" concept with the rule adopted by some courts in other states that a criminal malpractice plaintiff must have obtained postconviction

relief vacating the convictions that are the subject of the malpractice suit, in addition to or in lieu of proving actual innocence in some other manner. *See Barker v. Capotosto*, 875 N.W.2d 157, 158, 166 (Iowa 2016) (concluding that public policy considerations support requiring that a criminal malpractice plaintiff obtain postconviction relief). Here, Jama's sexual assault convictions were vacated and the State did not reissue those charges, so any such exoneration requirement has been met.

¶43 In sum, Gonzalez's argument that Jama is precluded from proceeding with his legal malpractice claim because he pleaded guilty to a third charge as to which he does not allege legal malpractice fails under the actual innocence rule adopted in *Hicks* and applied in *Tallmadge* and *Skindzelewski*.

## CONCLUSION

¶44 For the reasons stated, we conclude that under controlling case law, Jama's allegations that his former trial counsel negligently represented him as to two sexual assault charges, causing him injury, and that he has consistently asserted and can prove his innocence of those charges, suffice to withstand Gonzalez's motion to dismiss. Accordingly, we reverse and remand for further proceedings.

*By the Court.*—Order reversed and cause remanded.