COURT OF APPEALS OF VIRGINIA

Present:   Judges Raphael, Lorish and Callins
Argued at Lexington, Virginia

PUBLISHED

MARK O'HARA WRIGHT

v.        Record No. 1079-22-3

ANDREW C. GRAVES, ESQ.

OPINION BY
JUDGE STUART A. RAPHAEL
OCTOBER 17, 2023

FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
Michael S. Irvine, Judge Designate

Mark O'Hara Wright, *pro se*.

Brittany E. Shipley (Rosalie Pemberton Fessier; Timberlake, Smith,
Thomas & Moses, P.C., on brief), for appellee.


In this legal-malpractice case, Mark O'Hara Wright seeks compensatory damages from

Andrew C. Graves, the defense lawyer who represented him in a 2012 criminal trial in which

Wright was convicted on multiple charges, resulting in an 11-and-a-half-year prison term.  The most

serious conviction was for grand larceny from the person, for which Wright received a ten-year

sentence.  In June 2021, about three months before Wright's scheduled release, the United States

Court of Appeals for the Fourth Circuit concluded that Wright was entitled to federal habeas relief

on that conviction due to Graves's ineffective assistance of counsel.  *Wright v. Clarke*, 860 F. App'x

271 (4th Cir. 2021).

Wright sued Graves for legal malpractice in the Circuit Court of Rockingham County, but

the trial court sustained Graves's demurrer and dismissed Wright's amended complaint, concluding

that Wright failed to plead that he was actually innocent of the offense for which he was convicted.

Taking the facts in the light most favorable to Wright, however, we find that Wright successfully

pleaded that element.  So we reverse and remand this case for further proceedings.

BACKGROUND

In reviewing a trial court's decision sustaining a demurrer, "we accept as true all factual allegations in the complaint 'made with "sufficient definiteness to enable the court to find the existence of a legal basis for its judgment."'" *Patterson v. City of Danville*, 301 Va. 181, 197 (2022) (quoting *Squire v. Va. Hous. Dev. Auth.*, 287 Va. 507, 514 (2014)). But we are not bound by the pleader's conclusions of law that are couched as facts. *Id.* In evaluating the sufficiency of Wright's allegations, the trial court treated Wright's "amended complaint" to include his original complaint as supplemented by his "motion to amend." Wright's motion to amend incorporated by reference the Fourth Circuit's opinion in *Wright v. Clarke*. As Graves does not challenge the sources used by the trial court to evaluate Wright's allegations, we rely on the same sources here to set out the operative facts.

In March 2012, Wright, his brother Robert, and Robert's 15-year-old stepson drove to a grocery store in Harrisonburg and shoplifted some sandwiches and two cases of beer. *Wright*, 860 F. App'x at 274. The store's security guard, Garret Atkins, confronted them in the parking lot in front of the minivan that Wright was driving. Atkins

> took one of the cases of beer from Robert's hands. At that point, Robert's stepson stepped out of the minivan—with Wright on the opposite side of the van, out of Atkins's view—and "took a fighting stance" . . . . Robert then grabbed the beer back from Atkins, and Wright, Robert, and Robert's stepson left in the minivan, taking with them the sandwiches and beer.

*Id.* The grand jury indicted Wright for robbery by means of violence, premised on "Robert's physical taking of the beer from Atkins in the parking lot." *Id.* The prosecution amended the indictment on the day of trial to charge Wright with "robbery as a principal in the second degree, meaning that Wright was present for and aided or abetted Robert's taking of the beer." *Id.* The punishment if Wright were convicted of that offense was "a sentence of five years to life in prison." *Id.*

- 2 -

At the close of evidence, "the Commonwealth asked that the jury be instructed not only on robbery but also on grand larceny from the person—which, unlike the robbery charge, would not require proof of force or intimidation, and carrie[d] a lower sentence of zero to 20 years' imprisonment." *Id.* Although the Commonwealth argued that larceny from the person was a lesser-included offense of robbery, that was plainly wrong Virginia precedent that was "unequivocal and long-standing." *Id.* at 278 (citing *Ali v. Commonwealth*, 280 Va. 665, 669 (2010)). But Graves did not know that, so he agreed to the Commonwealth's proposed instruction. *Id.* at 274.

The jury acquitted Wright of robbery but convicted him of grand larceny from the person. *Id.* at 275. The trial court accepted the jury's recommendation to impose a ten-year prison sentence on that conviction. *Id.* Wright was also convicted of two other charges: "petit larceny, for originally taking the sandwiches and beer from the store without paying for them; and contributing to the delinquency of a minor, for the involvement of Robert's stepson," *id.* at 274 n.1, for which Wright was sentenced to a total of one-and-a-half years, *id.* at 275 n.2.[1] His scheduled release date from prison was September 7, 2021. *Id.* at 275.

With about three months left to serve in his sentence, Wright won federal habeas relief from the Fourth Circuit on the grand-larceny-from-the-person conviction because of Graves's ineffective assistance of counsel in failing to object to the erroneous jury instruction. *Id.* at 282-83. The Court found that Graves's "failure to perform even a minimal investigation of the law cannot be said to reflect a 'reasonable decision' or trial strategy." *Id.* at 279. "Because no 'reasonable professional judgments' can justify counsel's lack of investigation into the relevant law, his failure to object to

---

[1] Wright was also convicted and sentenced on two other charges "relating to events that transpired when Wright and his brother were arrested after leaving the grocery store," but those convictions were overturned on direct appeal by the Supreme Court of Virginia. *Wright*, 860 F. App'x at 275 n.2 (citing *Wright v. Commonwealth*, 292 Va. 386 (2016)).

Jury Instruction 10 [was] similarly unreasonable, and his performance deficient under *Strickland*." *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 691 (1984)).

In November 2021, Wright sued Graves for legal malpractice. Graves demurred on the ground that "[t]he complaint fails to allege facts sufficient to establish actual innocence, which is an element of a legal malpractice case arising from criminal proceedings."[2] The trial court sustained the demurrer on that ground, with leave to amend. Wright then filed a "motion to amend" with an accompanying affidavit, which Graves and the trial court treated as the amended complaint. Graves again demurred "for the same reason" as before. The trial court sustained the demurrer, this time with prejudice, finding that Wright's amended complaint "fails to establish Plaintiff's actual innocence."

Wright noted a timely appeal.

ANALYSIS

We review a trial court's decision sustaining a demurrer de novo. *Taylor v. Aids-Hilfe Koln e.V.*, 301 Va. 352, 357 (2022). Even if "a trial court believes [that] a claim brought by a pro se [plaintiff] may ultimately fail, at the pleading stage the trial court is bound by the same procedures, rules and policies which apply to a party represented by counsel." *Ogunde v. Prison Health Servs., Inc.*, 274 Va. 55, 65 (2007). We take the facts alleged and the inferences reasonably derived from those facts in the light most favorable to the plaintiff. *Id.* "We then determine whether those [facts] and any reasonable inferences therefrom satisfy the legal threshold for proving a prima facie case . . . ." *Patterson*, 301 Va. at 198. A demurrer tests "the legal sufficiency of facts alleged in

---

[2] Graves also filed a plea in bar based on the statute of limitations but later withdrew it. *See generally Adkins v. Dixon*, 253 Va. 275, 282 (1997) ("Since successful termination of such a [post-conviction] proceeding is a part of [a plaintiff's] cause of action [for legal malpractice arising out of a criminal proceeding], he has no right of action until that time and, thus, the statute of limitations does not begin to run until termination of the post-conviction proceeding.").

- 4 -

pleadings, not the strength of proof." *Parker v. Carilion Clinic*, 296 Va. 319, 326 n.1 (2018) (quoting *Coutlakis v. CSX Transp., Inc.*, 293 Va. 212, 216 (2017)).

A plaintiff alleging legal malpractice in the handling of a "civil matter" must plead facts showing "the existence of an attorney-client relationship which gave rise to a duty, breach of that duty by the defendant attorney, and that the [pecuniary] damages claimed by the plaintiff client [were] proximately caused by the defendant attorney's breach." *Desetti v. Chester*, 290 Va. 50, 56 (2015) (first alteration in original) (quoting *Shevlin Smith v. McLaughlin*, 289 Va. 241, 253 (2015)); *see* Code § 54.1-3906 ("Every attorney shall be liable to his client for any damage sustained by the client through the neglect of his duty as such attorney."). Graves's demurrer did not challenge that Wright had pleaded those elements.

But "a legal malpractice plaintiff who alleges that malpractice occurred during the course of a *criminal matter* has additional burdens of pleading." *Desetti*, 290 Va. at 56. First, a criminal-malpractice[3] plaintiff must plead that he received post-conviction relief. *Shevlin Smith*, 289 Va. at 251.[4] Given that the Fourth Circuit granted federal habeas relief on the conviction in question, *Wright*, 860 F. App'x at 283, that element is satisfied.

---

[3] "'Criminal malpractice' is a phrase that has been widely used 'to denote "legal malpractice in the course of defending a [person] accused of crime."'" *Piris v. Kitching*, 375 P.3d 627, 628 n.1 (Wash. 2016) (en banc) (alteration in original) (quoting *Ang v. Martin*, 114 P.3d 637, 640 n.1 (Wash. 2005)). *See generally* Dan B. Dobbs, Paul T. Hayden, and Ellen M. Bublick, *The Law of Torts* § 732 ("Criminal malpractice: the prima facie case") (2d ed. 2023).

[4] There may be times when the failure to obtain post-conviction relief does not bar recovery. *See Taylor v. Davis*, 265 Va. 187, 191 (2003) ("We hold that when, as here, a plaintiff in an attorney malpractice action against his former criminal defense attorneys makes allegations in his [complaint] which, if true, establish that the plaintiff is actually innocent as a matter of law because the purported offense for which he was convicted did not constitute a crime at the time the plaintiff was charged, and the plaintiff was unable to establish actual innocence because of his attorneys' negligence, the plaintiff is not required to plead that he sought and obtained post-conviction relief.").

Second, the plaintiff must "plead that the damages to be recovered were proximately caused by the attorney's negligence and were *not* proximately caused by the legal malpractice plaintiff's own criminal actions." *Desetti*, 290 Va. at 56-57 (emphasis added). The plaintiff cannot recover if his criminal conduct and the attorney's negligence *both* caused the damages. When the defendant is actually guilty of the crime charged, the defendant's "actual guilt . . . was the proximate cause of the conviction[]." *Adkins v. Dixon*, 253 Va. 275, 282 (1997). In other words, a criminal-malpractice plaintiff must show his actual innocence to the underlying offense to demonstrate that the damages were not caused by the plaintiff, but by his counsel.[5] Virginia is among the majority of jurisdictions that impose an actual-innocence requirement.[6]

---

[5] Applying Virginia law, the court in *Jones v. Link*, 493 F. Supp. 2d 765 (E.D. Va. 2007), held that actual innocence is not an element of a criminal-malpractice claim that challenges the *severity* of the sentence imposed as a result of the lawyer's negligence. *Id.* at 770-71. This appeal does not require that we consider that question.

[6] *See, e.g.*, *Wiley v. Cnty. of San Diego*, 966 P.2d 983, 990 (Cal. 1998); *Rojo v. Tunick*, 193 N.E.3d 149, 156 (Ill. App. Ct. 2021); *Schreiber v. Rowe*, 814 So. 2d 396, 399-400 (Fla. 2002) (per curiam); *Gomez v. Peters*, 470 S.E.2d 692, 695 (Ga. Ct. App. 1996); *Correia v. Fagan*, 891 N.E.2d 227, 233 (Mass. 2008); *Rosenberg v. Shostak*, 405 S.W.3d 8, 14 (Mo. Ct. App. 2013); *Buttercase v. Davis*, 982 N.W.2d 240, 251 (Neb. 2022); *Morgano v. Smith*, 879 P.2d 735, 738 (Nev. 1994); *Gaylor v. Jeffco*, 999 A.2d 290, 293 (N.H. 2010); *Dombrowski v. Bulson*, 971 N.E.2d 338, 350-51 (N.Y. 2012); *Brown v. Theos*, 550 S.E.2d 304, 306 (S.C. 2001); *Gray v. Skelton*, 595 S.W.3d 633, 639 (Tex. 2020); *Piris*, 375 P.3d at 628 (Wash.); *Humphries v. Detch*, 712 S.E.2d 795, 801 (W. Va. 2011); *Skindzelewski v. Smith*, 944 N.W.2d 575, 579-80 (Wis. 2020); *see also Foondle v. O'Brien*, 346 P.3d 970, 973-74 (Alaska 2015) (requiring actual innocence but placing burden on defendant to prove that plaintiff was guilty of the underlying charge); *Bailey v. Tucker*, 621 A.2d 108, 113-15 (Pa. 1993) (requiring actual innocence for criminal malpractice claim sounding in tort, but not when sounding in contract, except that recovery in contract is limited to the fee paid to defense counsel).

Some jurisdictions do not require a showing of actual innocence. *See, e.g.*, *Molen v. Christian*, 388 P.3d 591, 596 (Idaho 2017); *Myers v. Maxson*, 51 N.E.3d 1267, 1277 (Ind. Ct. App. 2016); *Barker v. Capotosto*, 875 N.W.2d 157, 168 (Iowa 2016); *Mashaney v. Bd. of Indigents' Def. Servs.*, 355 P.3d 667, 670 (Kan. 2015); *Lawrence v. Bingham, Greenebaum, Doll, L.L.P.*, 567 S.W.3d 133, 140 (Ky. 2018); *Berringer v. Steele*, 758 A.2d 574, 597 (Md. Ct. Spec. App. 2000); *Schlumm v. Terrence J. O'Hagan, P.C.*, 433 N.W.2d 839, 846 (Mich. Ct. App. 1988); *Marrero v. Feintuch*, 11 A.3d 891, 898 (N.J. Super. Ct. App. Div. 2011); *Dove v. Harvey*, 608 S.E.2d 798, 802 (N.C. Ct. App. 2005); *Thorp v. Strigari*, 800 N.E.2d 392, 395 (Ohio Ct. App. 2003); *see also* Restatement (Third) of the Law Governing Lawyers § 53 cmt. d (2000) (following the minority rule).

The general rule preventing recovery when the injury is due to the defendant's criminal behavior, and not the attorney's negligence, effectuates the *ex turpi causa* doctrine. That doctrine was famously described by Lord Mansfield in *Holman v. Johnson*, 1 Cowp. 341, 98 Eng. Rep. 1120 (K.B. 1775):

> No Court will lend its aid to a man who founds his cause of action upon an immoral or an illegal act. If . . . the cause of action appears to arise *ex turpi causa*, or the transgression of a positive law of this country, . . . he has no right to be assisted.

*Id.* at 343, 98 Eng. Rep. at 1121. The *ex turpi causa* doctrine has long been part of Virginia jurisprudence. *See Miller v. Bennett*, 190 Va. 162, 165 (1949); *Maughs v. Porter*, 157 Va. 415, 422 (1931); *S. Ry. Co. v. Rice's Adm'x*, 115 Va. 235, 245 (1913); *Roller v. Murray*, 112 Va. 780, 783-84 (1911). The doctrine "applies to both tort and contract actions." *Wackwitz v. Roy*, 244 Va. 60, 64 (1992) (quoting *Miller*, 190 Va. at 165).[7] The plaintiff's "transgression of a positive law," *Miller*, 190 Va. at 165 (quoting *Holman*, 1 Cowp. at 343, 98 Eng. Rep. at 1121), defeats his recovery because his "violation of law contributed directly and proximately to cause him [the] injury," *S. Ry. Co.*, 115 Va. at 246. As *Desetti* explained in the criminal-malpractice context, "it is the policy throughout the Commonwealth that a criminal defendant may not profit from a crime in a subsequent legal malpractice action." 290 Va. at 56.[8]

We disagree with the trial court that Wright failed to plead actual innocence. At the demurrer stage, Wright adequately pleaded that he was factually innocent of the crime for which he was convicted: grand larceny from the person.

---

[7] In Virginia, "an action for the negligence of an attorney in the performance of professional services, while sounding in tort, is an action for breach of contract." *Oleyar v. Kerr*, 217 Va. 88, 90 (1976).

[8] Judge Martin correctly connected the actual-innocence requirement to the *ex turpi causa* doctrine in 1997. *See Ostrander v. Joynes*, 46 Va. Cir. 518, 524 (Norfolk 1997) ("The ancient maxim *ex turpi causa non oritur actio* remains the public policy of Virginia. Requiring the [criminal-malpractice] plaintiff to plead and prove his innocence supports this policy.").

Wright pleaded that he never interacted with the security guard, Atkins, let alone "*any person with whom he could have committed grand larceny from [the person].*" That well-pleaded allegation is in harmony with the description of the facts in the Fourth Circuit's opinion in *Wright*, incorporated by reference in Wright's pleadings. As the Fourth Circuit noted, Wright was "on the opposite side of the van, out of Atkins's view." 860 F. App'x at 274. "Atkins testified that he never spoke to Wright on the day of the incident; the one thing he heard from Wright's side of the minivan was someone saying, 'let's go, let's go,' after Robert had taken the beer from him." *Id.* Those factual assertions support Wright's conclusion that he "is factually and actually innocent of [the] offense" and that his "incarceration from December 25, 2012 to July 15, 2021 was proximately caused by [Graves's] malpractice and not by any criminal conduct."

We are not persuaded by Graves's claim that Wright's exoneration in the Fourth Circuit was "premised upon a legal technicality." To be sure, Wright's habeas claim succeeded because Graves should have recognized that grand larceny from the person was not a lesser-included offense of robbery. *See Wright*, 860 F. App'x at 278. But the question here is whether Wright pleaded facts showing that he was actually innocent of grand larceny from the person. He did.[9]

---

[9] Graves does not claim that Wright's convictions for petit larceny (stealing the sandwiches and beer from the store) or contributing to the delinquency of a minor (Robert's stepson) disable Wright from recovering against Graves for his alleged malpractice in defending the grand-larceny-from-the-person charge. We therefore do not address whether the actual-innocence element requires the criminal-malpractice plaintiff to be innocent of all transactionally related charges. *Compare Godbolt v. Brawley*, 250 Va. 467, 472 (1995) (holding that plaintiff's misdemeanor assault on defendant did not preclude plaintiff's recovering damages for defendant's use of deadly force in response), *and Jama v. Gonzalez*, 954 N.W.2d 1, 7-9 (Wis. Ct. App. 2020) (holding that a criminal-malpractice plaintiff may recover when innocent of the negligently defended charge, even when guilty of related charges), *with Wilkinson v. Zelen*, 83 Cal. Rptr. 3d 779, 781 (Cal. App. Ct. 2008) ("[A] legal malpractice plaintiff must prove factual innocence and exoneration as to all transactionally related offenses comprising the basis for the underlying criminal proceeding in order to maintain a malpractice action."), *and Bailey*, 621 A.2d at 113 (requiring for criminal-malpractice actions sounding in tort that "the defendant must prove that he is innocent of the crime or any lesser included offense").

Likewise, we cannot credit Graves's claim that Wright's grand-larceny-from-the-person conviction precludes Wright from proving his innocence in this criminal-malpractice case. Graves argues that the jury found Wright guilty of that charge and that Wright has never challenged the correctness of the jury instruction on that offense. Graves adds that this Court affirmed that conviction on direct review, finding the evidence sufficient to support the conviction. *See Wright v. Commonwealth*, No. 0585-13-3, slip op. at 2-5, 2014 WL 6428302, at *1-2 (Va. Ct. App. Nov. 18, 2014), *aff'd in part, rev'd in part*, 292 Va. 386 (2016). But Graves's preclusion argument presumes that the jury verdict in the criminal case estops Wright from asserting his innocence here. Given the lack of mutuality between the parties, however, that conclusion is problematic.[10] In any case, since Graves failed to argue issue preclusion as part of his demurrer in the trial court, we cannot consider that argument here. *See Theologis v. Weiler*, 76 Va. App. 596, 604 (2023) (holding that Code § 8.01-273(A) prevents an appellate court from affirming an order sustaining a demurrer on grounds that were not raised by the defendant in the trial court).

CONCLUSION

The trial court erred when it sustained the demurrer to the amended complaint because Wright adequately pleaded that he was actually innocent of the crime for which he was convicted:

---

[10] *Compare, e.g.*, *Selected Risks Ins. Co. v. Dean*, 233 Va. 260, 261 (1987) ("In Virginia, the settled rule is that 'a judgment of conviction or acquittal in a criminal prosecution does not establish in a subsequent civil action the truth of the facts on which it was rendered' and 'such judgment of conviction or acquittal is not admissible in evidence' in the civil case. 'The reason for the rule is that the parties in a criminal proceeding are not the same as those in a civil proceeding and there is a consequent lack of mutuality.'" (quoting *Smith v. New Dixie Lines*, 201 Va. 466, 472 (1959))), *with Eagle, Star & British Dominions Ins. Co. v. Heller*, 149 Va. 82, 104-05 (1927) (barring convicted arsonist from recovering on his fire-insurance policy because he sought "to recover the fruit of his own crime"), *and Haring v. Prosise*, 462 U.S. 306, 316 n.10 (1983) (noting that *Eagle*'s "narrow exception" to the mutuality doctrine "was expressly limited to cases in which 'the plaintiff who brings [the] action has committed a felony, and seeks to recover the fruit of his own crime'" (alteration in original) (quoting *Eagle*, 149 Va. at 105)).

grand larceny from the person.  We remand the case for further proceedings consistent with this

opinion.

*Reversed and remanded.*

Lorish, J., concurring.

I agree with the majority that the narrowest and best grounds to reverse the trial court at the demurrer stage is to simply find that Wright did plead his actual innocence to grand larceny from the person. *See, e.g.*, *Butcher v. Commonwealth*, 298 Va. 392, 396 (2020) (the doctrine of judicial restraint requires us to decide cases on the best and narrowest grounds available). I write separately merely to highlight a question Wright raises that we are not deciding today—whether his case merits an exception to the general rule that a criminal-malpractice plaintiff must prove actual innocence.

As the majority explains, our case law typically ensures that counsel's negligence was the proximate cause of a criminal-malpractice plaintiff's injury by requiring two additional pleading burdens on top of the usual legal malpractice elements: post-conviction relief and actual innocence. Both requirements will *usually* be necessary to prove the damages claimed by the criminal-malpractice plaintiff were proximately caused by the defendant attorney's breach of duty, and not by the plaintiff's own actions. But not always.

Our Supreme Court has recognized, thus far, at least one circumstance where pleading only actual innocence, but not post-conviction relief, is sufficient. *Taylor v. Davis*, 265 Va. 187, 191 (2003) (finding the "plaintiff was unable to establish actual innocence because of his attorneys' negligence [in not filing for post-conviction relief so] the plaintiff is not required to plead that he sought and obtained post-conviction relief"). Under such circumstances, there is no risk of violating the rule that "courts will not assist the participant in an illegal act who seeks to profit from the act's commission," *Zysk v. Zysk*, 239 Va. 32, 34 (1990), or that the "criminal plaintiff's own actions are presumably the proximate cause of his injury," *Jones v. Link*, 493 F. Supp. 2d 765, 769 (E.D. Va. 2007). Thus, pleading "actual innocence" without pleading "post-conviction relief" may be sufficient to show causation depending on the circumstances.

- 11 -

The reverse may also be true—Wright argues that his circumstance is one where post-conviction relief without actual innocence can satisfy proximate causation. While no case to date has posed this issue in our courts, a federal district court applying Virginia law held that "an allegation of actual innocence is not required where . . . [the] plaintiff complains that his attorney's negligence resulted in a sentencing error for which he obtained post-conviction sentencing relief." *Id.* at 769-70 (citing *Powell v. Assoc. Counsel for the Accused*, 129 P.3d 831, 833 (Wash. Ct. App. 2006) (finding an exception to the actual innocence requirement where the criminal-malpractice plaintiff served a substantially longer sentence than the court was allowed to impose)); *Johnson v. Babcock*, 136 P.3d 77, 80 n.2 (Or. Ct. App. 2006) (not requiring actual innocence for a claim "based on an unlawful sentence"). In such a case, pleading that the "attorney's negligence resulted in a sentencing error . . . [and] that plaintiff obtained post-conviction sentencing relief" is sufficient, as "excusing plaintiff from the actual innocence requirement does not permit plaintiff to 'profit from the [crime's] commission' because plaintiff is still required to serve the legally warranted sentence." *Jones*, 493 F. Supp. 2d at 770 (third alteration in original) (quoting *Adkins v. Dixon*, 253 Va. 275, 281-82 (1997)).[11] In addition, in

---

[11] More and more jurists have questioned the logic of equating damages from a legal malpractice action to profit from a crime. In partial explanation of its decision to abandon its prior "actual innocence" requirement altogether, the Kansas Supreme Court noted that "[a] criminal defendant successfully suing his or her lawyer for negligence based on a conviction and the resulting incarceration isn't profiting from his or her underlying crime." *Mashaney v. Bd. of Indigents' Def. Servs.*, 355 P.3d 667, 684 (Kan. 2015) (quoting *Mashaney v. Bd. of Indigents' Def. Servs.*, 313 P.3d 64, 87 (Kan. Ct. App. 2013) (Atcheson, J., dissenting)). Instead, that defendant

> is being compensated for a legal injury—a loss of liberty—directly
> resulting from the lawyer's malpractice in failing to obtain a
> favorable result for the client in the criminal prosecution . . .
> [which is] not profiting any more than a person injured in a motor
> vehicle collision 'profits' from a damage award for the harm he or
> she has suffered.

such cases "the improper sentence was not the direct result of plaintiff's criminal behavior, but rather, it was the proximate result of his attorney's negligence." *Id.* Thus, pleading "post-conviction relief," without pleading "actual innocence" may, at least sometimes, be sufficient to show causation.

On remand, Wright will have to meet his burden to prove Graves's malpractice proximately caused his harm, and the majority opinion does not resolve whether an exception to the actual innocence requirement may apply such that he does not have to show actual innocence of the uncharged offense.[12]

---

*Id.* (quoting *Mashaney*, 313 P.3d at 87 (Atcheson, J., dissenting)). The same opinion details other reasons why "the actual innocence rule detrimentally distorts the law in ways disadvantaging criminal defendants suffering tangible harm because of their lawyers' incompetence, leaving injuries unredressed that the tort system would otherwise compensate" and why "[r]ejecting that rule would better serve the true public policies embodied in the criminal justice process and in civil tort law." *Id.* at 679 (quoting *Mashaney*, 313 P.3d at 82 (Atcheson, J., dissenting)). *See also Skindzelewski v. Smith*, 944 N.W.2d 575, 587-88 (Wis. 2020) (Dallet, J., dissenting); *Piris v. Kitching*, 375 P.3d 627, 632-36 (Wash. 2016) (en banc) (Stephens, J., dissenting); Restatement (Third) of the Law Governing Lawyers § 53 (2000) ("[U]nder this Section it is not necessary to prove that the convicted defendant was in fact innocent.").

[12] Requiring a criminal-malpractice plaintiff to prove actual innocence of uncharged offenses could impose additional burdens far afield of ensuring that an attorney's negligence was the proximate cause of the criminal-malpractice plaintiff's injury. If, for example, a criminal-malpractice plaintiff successfully obtains post-conviction relief for a conviction of felony assault against a law enforcement officer because his counsel was ineffective, after being incarcerated for many years, it is not immediately obvious that requiring that plaintiff to affirmatively prove that they did not also commit the entirely different, and uncharged, offense of misdemeanor resisting arrest would bear on whether the plaintiff was injured because of counsel's negligence.